## DAVIS et al. v. CITY OF HOUSTON.
### (No. 8632.)

(Court of Civil Appeals of Texas. Galveston. May 29, 1924. Rehearing Denied June 26, 1924.)

**1. Municipal corporations ⟨⟩121 — Pleadings held to show no rights of jitney owner which would be injured by enforcement of ordinance.**

Where a petition to test the validity of a city ordinance prohibiting the use of jitneys of a certain size on public streets did not show that plaintiffs, jitney owners, had a grant or license from the city, and pleading of defendant city showed that licenses granted expired before the ordinance would take effect, the pleadings did not show that any property right of plaintiffs would be injured by enforcement of the ordinance.

**2. Municipal corporations ⟨⟩703(1)—City may regulate use of streets for business.**

A city has authority to regulate use of its streets for the conduct thereon of business of any kind, and the use thereof can only be acquired by grant or license from the city.

**3. Injunction ⟨⟩34—Jitney passengers held to have no vested property right in transportation furnished by jitneys.**

Passengers using jitneys acquire no vested property right in such method of transportation, entitling them to enjoin the city from discontinuing granting jitney licenses, and an ordinance prohibiting the use of jitneys of certain carrying capacity on city streets did not invade their property rights.

**4. Injunction ⟨⟩11—In absence of threat of criminal prosecution, equity will not enjoin enforcement of city ordinance.**

In suit to test the validity of a city ordinance prohibiting operation of jitneys upon the streets and providing a penalty for violation thereof, failure to allege that prosecution under·the ordinance was imminent or threatened prevents enjoining enforcement of the ordinance.

**5. Injunction ⟨⟩105(2)—Enforcement of void city ordinance may be enjoined.**

If an ordinance prohibiting use of jitneys and providing penalty for violation thereof were void and operators were being threatened with criminal prosecution thereunder, the jurisdiction of a court of equity to prevent a multiplicity of suits might be invoked to enjoin the prosecution.

**6. Municipal corporations ⟨⟩108—Referendum election for adoption of ordinance held in time; "in the same manner."**

Where a city charter provided that on initiation of legislation by voters the city council should, within 10 days, pass the ordinance or submit it to popular, vote at a special election, "which must be held within 30 days" after the ordering thereof, and that if a petition of voters ·protesting against enactment or enforcement of an ordinance or resolution is presented it should be submitted to popular vote at the next municipal election, or a special election for that purpose, and that the council might submit to vote for adoption, rejection, or repeal any proposed ordinance "in the same manner" as provided for in submission on petition, an ordinance referred by the council to the voters and passed by them at an election was not void because the election was not held within 30 days after the date on which it was ordered as required in voting on an ordinance initiated by petition of citizens; the provision "in the same manner" referring, not to the time, but to the way or method.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Same Manner.]

**7. Municipal corporations ⟨⟩58 — Article of charter construed as whole.**

An article of the city charter containing several sections and subdivisions should be construed as a whole.

**8. Municipal corporations ⟨⟩703(1)—City may prohibit use of streets by jitneys.**

Where a city charter gave the city general powers of local government and control of its streets in general, and control of franchises for the use of streets, in the exercise of its police power it could by ordinance prohibit the use of jitneys for hire.

**9. Municipal corporations ⟨⟩703(1)—Right to use streets for private business can only be acquired by city's permission.**

The ordinary use of a city's streets by a citizen is an inherent right which cannot be taken from him by the city, and may only be controlled by reasonable regulation; but the right to use the streets for conducting thereon a private business is not inherent or vested and can only be acquired by permission or license from the city, whose power to withhold such permission or license is an essential and necessary prerogative of municipal government.

**10. Municipal corporations ⟨⟩703(1)—Classification of jitneys in ordinance not unreasonable.**

A city ordinance prohibiting use of city streets by jitneys having a seating capacity of less than 15 was not unreasonable because of its classification of vehicles.

Appeal from District Court, Harris County; Ewing Boyd, Judge.

Suit by A. C. Davis and others against the City of Houston. From a judgment for defendant, plaintiffs appeal. Affirmed.

K. C. Barkley, L. H. Kenner. W. S. Parker, and W. Owen Dailey, all of Houston, for appellants.

Sewall Myer, of Houston, for appellee.

PLEASANTS, C. J. This is a suit by A. C. Davis and a number of other owners and operators of public carrying "jitneys," or five-passenger automobiles, in the city of Houston, joined by 200 or more citizens who customarily availed themselves of the "jitney" transportation service, against appellee, to

test the validity of an ordinance of the city of Houston prohibiting the use of the streets of the city for such jitney service.

The ordinance complained of, which took effect on March 31, 1924, abolishes all jitney routes for the operation of vehicles in the jitney service theretofore established and existing in the city, except jitneys operated in interurban service, and provides that no jitney route shall be thereafter established which shall in whole or in part include any street or streets in which a street railway track on which street cars are operated is located, except in a defined area described by metes and bounds.

The term "jitney service" is defined by the ordinance to mean "cover and embrace any use of any street or streets in the city of Houston by any automobile, motor bus, truck or other trackless vehicle which is held out or announced by sign, voice, writing, device or advertisement or otherwise to run or operate, or is intended to run or operate to or from any particular or designated termini (or) zone of travel for the carriage of passengers for hire, or for a gratuity or donation, however the same may be received."

The ordinance further provides that no license shall thereafter be granted for the operation in the jitney service of any automobile, motor bus, truck, or other trackless vehicle with a seating capacity of less than 15, and it is made unlawful for any person to drive, operate, or cause to be driven or operated in the jitney service any vehicle of the kind described of less seating capacity than 15, and any person so offending is declared guilty of a misdemeanor and made punishable by a fine of not less than $5 and not more than $100. Each day on which a vehicle is operated is made a separate offense.

The plaintiffs, operators of jitneys, alleged in substance that for several years they have been operating jitneys upon certain named streets and along designated routes under rules and regulations prescribed by the city of Houston, and have and will continue to comply with all rules and regulations prescribed by the ordinances of the city. They then attack the ordinance before mentioned on the ground that it has not been legally passed or adopted, in that the election, by which, under the provisions of the city charter, it was referred to the people for adoption, was illegal and void because it was not held within the time prescribed, and notice thereof was not given as required by the charter of the city. They further alleged that the ordinance is void because it is unreasonable, discriminatory in its provisions, unauthorized and unwarranted by the city charter, and not within the police power of the city.

"The appellant-passengers adopt all of the allegations of the appellant-operators, and in addition allege that they are furnished service on each of the jitney lines of their coplaintiffs

for six cents and that if appellant-operators do not furnish them such service that there are others coming within any reasonable regulations who are desirous and will furnish them the service; that the enforcement of the said ordinance takes away from them the transportation service which they have become accustomed to and are entitled to, the jitneys having operated in Houston for many years; that it increases their fare to and from the business section of Houston by 16⅔ per cent., and that they lose from 20 to 30 minutes per day from work or pleasure, for which they have no adequate, nor any remedy at law. They allege further that in the rush hours of the morning when it is imperative that they go to work or their place of business, or in the evening at the time that they return to their homes, the remaining system of street transportation, to wit, the electric railway system, has not the facilities and cannot furnish to them the service reasonably adequate for their needs, and that the compelling of them to pay an increased fare of 16⅔ per cent. and taking away from them of an average of 30 minutes per day of their time is the denying to them of their constitutional rights and privileges guaranteed by the Constitution of the United States and the state of Texas. They allege also that the addition of the small number of cars set out does not add to nor detract from the use of streets by pedestrians and others, nor to the wear and tear thereon, and is wholly insufficient to warrant the exercise of the prohibition of the same upon the streets; that the enforcement of •the said ordinance would deprive appellant-passengers of the right and privilege of riding to and from their work in their automobiles, but would accord the same right to private owners of automobiles; that the small amount of revenue that would be taken from the existing electric line would not add appreciably to the service and revenue of the electric line attempting to serve the territory in which they respectively reside; that the deprivation of this character of transportation depreciates and lessens in value materially their property, especially so on streets not served by street cars, and that the taking of the service away leaves the appellant-passengers, in many instances, without adequate system of transportation to and from work; that the street railway system is obtaining sufficient revenue from the operation of its system with said service cars in operation to give a fair return upon the investment, after payment of operating expenses and depreciation, and that no necessity exists such as would warrant the exercise of the police power vested in the mayor and the city commissioners and the people of the city of Houston, to enforce the same if such ordinances were otherwise legal, and that the taking of their time and the increase in fares would be taking their property to make a forced contribution to the Houston Electric Company, whose system is wholly inadequate to furnish efficient and proper service; and that the taking of the service cars off the streets would not add to or tend to promote either the public health, morals, safety, or welfare of the people of Houston, and that the enforcement of the said ordinances, if the same were legally passed, under the facts and circumstances as to transportation stated and existing in the city of Houston, would be unrea-

sonably oppressive upon the appellants, and would constitute an oppressive and gratuitous interference with their rights, which, under the facts, would have no justification in the minds of reasonable men."

Several of these passenger plaintiffs alleged special damages in the depreciation of the value of their property if they are. deprived of the jitney service prohibited by the ordinance.

All of the plaintiffs allege that they have no adequate remedy at law to protect them from the injury they will sustain by the attempted enforcement of the invalid ordinance, and that they will suffer irreparable injury and damage if the attempted enforcement of the ordinance is not enjoined; they pray for temporary and permanent injunction restraining the mayor and city commission of the city of Houston from attempting to enforce said ordinance.

The petition was properly verified by the affidavit of one of the plaintiffs.

The defendant answered by general demurrer and special exceptions, and by sworn answer specially denied many of the material allegations of the petition.

Upon a hearing in the court below on the prayer for temporary injunction the court refused to grant the injunction, the judgment and order of the court appealed from being as follows:

"The court having read and considered the pleadings of all the parties denies the relief sought, and finds that under the allegations of plaintiffs' petition they are not entitled to the temporary injunction as prayed for, and the same is in all things refused."

This judgment refusing the temporary injunction must be affirmed for several reasons.

[1, 2] In the first place, the petition fails to show that the enforcement of the ordinance complained of will result in irreparable injury to any property right of plaintiffs. In so far as the plaintiff owners and operators of public jitneys are concerned, the only right which they claim will be invaded by the enforcement of the ordinance is the right to carry on the business of operating jitneys for hire upon the streets of the city. The authority of a city to regulate or even prohibit the use of its streets for the conduct thereon of business of any kind cannot be questioned, and the right to such use can only be acquired by a grant or license from the city. The petition does not show that these plaintiffs have any grant or license from the city to operate public jitneys upon any of the streets of the city, and the sworn pleading of the defendant and the ordinances of the city referred to in the pleadings of both parties show that the grant or. license from the city under which these plaintiffs have heretofore carried on their business of operating jitneys upon the streets expired prior to the taking effect of the ordinance sought to be enjoined. In this situation, it certainly cannot be held that any property right of these plaintiffs will be injured by the enforcement of the alleged invalid ordinance.

[3] In so far as plaintiff passengers are concerned, no one would contend that the ordinance in question injures or invades any property right of theirs. They certainly acquired no such vested property right in the means of transportatión furnished by the jitney operators under license from the city as would entitle them to enjoin the city from discontinuing granting such license. Greene v. San Antonio (Tex. Civ. App.) 178 S. W. 6; Wade v. Nunnelly, 19 Tex. Civ. App. 256, 46 S. W. 668.

[4, 5] As before shown, the ordinance sought to be enjoined prohibits the operation of jitneys upon the streets of the city and provides that any person violating the provisions of the ordinance shall be decreed guilty of a misdemeanor and punished by a fine of not less than $5 nor more than $100. If this ordinance was void and the plaintiff operators were being threatened with criminal prosecution thereunder, the jurisdiction of a court of equity to prevent a multiplicity of suits might be invoked to enjoin such prosecution. McQuillan, par. 802, pp. 1720–1725. But plaintiffs' petition contains no allegations that prosecution under the ordinance is imminent or threatened, and in the absence of such allegations this ground of jurisdiction is not invoked.

We are further of opinion that if it should be held that plaintiffs are entitled to maintain this suit the judgment should nevertheless be affirmed because the ordinance sought to be enjoined cannot be held void upon any of the grounds urged by plaintiffs.

[6] The ordinance in question was approved by the city council, and on the council's own motion was, on December 3, 1923, ordered submitted to the qualified voters of the city for "their adoption or rejection." The ordinance ordering the special election for the adoption or rejection of the ordinance submitted to the voters provided that the election should be held on January 19, 1924, and the election at which the ordinance was adopted by a large majority of the voters was held on that date.

Plaintiffs contend that this election was void because it was not held within 30 days after it was ordered, as required by the city charter.

The election was ordered and held under the "Initiative and Referendum" provision of the city charter. Article VIIb of the city charter, after granting the general power of direct legislation by means of the initiative and referendum, by section 2 of this article provides for the method by which legislation may be initiated and its passage procured by the qualified voters of the city.

Subdivision (c) of this section provides in substance that when any ordinance or resolution shall be presented to the city council and its passage requested by the petition of a prescribed number of qualified voters, the council shall within ten days after the receipt of the petition either pass the ordinance or resolution without alteration, or submit it to the popular vote at a special election "which must be held within thirty days after the date of the ordering thereof."

Section 3 prescribes the method for referendum' to the voters for rejection or adoption of any ordinance or resolution that may be passed by the city council. The first paragraph of this section provides in substance that if, prior to the time when an ordinance or resolution shall take effect, or within 30 days after its publication, a petition signed by the prescribed number of qualified voters is presented to the city council protesting against the enactment or enforcement of such ordinance or resolution, it shall be suspended from taking effect "and no action theretofore taken under such ordinance or resolution shall be legal and valid. * * * Thereupon the council shall immediately reconsider such ordinance or resolution and, if it does not entirely repeal the same, shall submit it to popular vote at the next municipal election, or the council may, in its discretion, call a special election for that purpose; and such ordinance or resolution shall not take effect unless a majority of the qualified electors voting thereon at such election shall vote in favor thereof."

Section 4 of this article of the charter, under which the election in question was ordered, is as follows:

"The council, of its own motion, may submit to popular vote for adoption or rejection or repeal at any election any proposed ordinance or resolution or measure in the same manner and with the same force and effect as provided in this article for submission on petition."

We cannot agree with appellants that a special election held under the provisions of section 4 of the charter is required to be held within 30 days after the date on which it is ordered.

[7] This article of the charter should be construed as a whole in order to ascertain the purpose and intent of the Legislature as expressed by the language used in its several sections and subdivisions.

The requirements in section 2 that the council shall act upon the petition within 10 days after its receipt, and that the election must be held within 30 days from the date on which it is ordered, are for the obvious purpose of securing the prompt enactment of ordinances and resolutions initiated by the voters under the provisions of the charter, and to prevent the council from unnecessarily delaying such enactment.

In referendum elections held under section 3 the necessity for fixing the time in which the election shall be held in order to secure a prompt response by the council to the petition against enforcement of an objectionable ordinance is abrogated by the provision that the filing of the petition suspends the operation and enforcement of the ordinance, and therefore this section provides that the submission of the question of the final adoption or rejection of the ordinance may be submitted at the next general municipal election, or, in the discretion of the council, at a special election called to be held at such time as it may deem advisable.

The absence of any necessity or reason for limiting the time in which an election shall be held under the provisions of section 4 is obvious, and therefore the Legislature fixed no time in which the election should be held. While the use of the phrase "in the manner" might under some circumstances be properly construed as including the element of time, such construction is not required to be given this charter provision. When the article is considered as a whole, we think the phrase should be given its ordinary meaning, which is, the way or method of doing a thing and does not involve the idea of the time in which the thing shall be done. Melsheimer v. McKnight, 92 Miss. 386, 46 South. 828; Chomel v. United States, 192 Fed. 117, 112 C. C. A. 461; Bankers' Life Ins. Co. v. Robbins, 59 Neb. 170, 80 N. W. 484.

If the phrase as here used should be construed as including the time in which the election was required to be held, the reference in the quoted section to "submission on petition" does not necessarily mean submission on initiative petition as provided in section 2, but could more reasonably be understood as referring to referendum election under section 3, which also has its inception in a petition. There is, as before said, no conceivable reason for requiring an election, called on the council's own motion to approve or reject an ordinance proposed by the council, to be held within thirty days after it is ordered, when an election called as a result of a petition against the enforcement of an ordinance passed by the council is only required to be called at the next general election or at a special election called to be held at such time as the council, in its discretion, may deem advisable. The purpose of these two elections is essentially the same, that purpose being to obtain the judgment of the voters upon an ordinance proposed or passed by the council, and both should be held in the same manner and within the same time limit.

[8] The general right of a city in the exercise of its police powers to regulate and control the use of its streets is not questioned by appellants, but they contend that this ordinance which prohibits the use of the

streets for the operation of jitneys as that business is defined in the ordinance is beyond the power of the city. This contention is not supported by any authority.

[9] The distinction between the ordinary use of streets by a citizen in traveling or transporting his property thereon in the usual course of life and business, and their use as a place for carrying on a private business such as operating for private gain jitneys or other means of public transportation thereon, is obvious and is recognized by all the authorities. The ordinary use of the streets by the citizens is an inherent right which cannot be taken from him by the city and may only be controlled by reasonable regulation, while the right to use the streets for conducting thereupon a private business of any character is not an inherent or vested right and can only be acquired by permission or license from the city and the power of the city to withhold such permission or license is an essential and necessary prerogative of municipal government.

The general power of a municipal government is conferred by the city charter of Houston in the very broadest language.

Section 2, art. 11, of the charter is as follows:

"The city council shall have power to enact and to enforce all ordinances necessary to protect life, health and property; to prevent and summarily abate and remove nuisances; to preserve and promote good government, order, security, amusement, peace, quiet, education, prosperity and the general welfare of said city and its inhabitants; to exercise all the municipal powers necessary to the complete and efficient management and control of the municipal property and affairs of said city to effect the efficient administration of the municipal government of said city; to exercise such powers as conduce to the public welfare, happiness and prosperity of said city and its inhabitants; and to enact and enforce any and all ordinances upon any subject; provided, that no ordinance shall be enacted inconsistent with the provisions of this Charter; and, provided, further, that the specification of particular powers shall never be construed as a limitation upon the general powers herein granted; it being intended by this charter to grant to and bestow upon the inhabitants of the city of Houston and the city of Houston full power and local self-government, and it shall have and exercise all powers of municipal government not prohibited to it by its charter, or by the provisions of the Constitution of the state of Texas."

Sections 4 and 17 of the article give the city the power of disposition and control of its streets. These sections are as follows:

"Sec. 4. *Street Powers.*—The city of Houston shall have power to lay out, establish, open, alter, widen, lower, extend, grade, narrow, care for, sell, pave, supervise, maintain and improve streets, alleys, sidewalks, squares, parks, public places and bridges, and to vacate and close the same; and to regulate the use thereof; and to require the removal from the streets and sidewalks of all obstructions, telegraph, telephone, street railway or other poles carrying electric wires, signs, fruit stands, showcases, and encroachments of every character upon said streets or sidewalks; and to vacate and close private ways."

"Sec. 17. *Franchises.*—The right of control, easement, user and ownership of and title to the streets, highways, public thoroughfares and property of the city of Houston, its avenues, parks, bridges, and all other public places and property are hereby declared to be unalienable except by ordinance duly passed by a majority of all the members of the city council and approved by the mayor."

The right or power of the city to refuse to permit the use of its streets for private business of any kind has been uniformly upheld by the courts.

In the case of city of Memphis v. State, 133 Tenn. 83, 179 S. W. 631, L. R. A. 1916B, 1151, Ann. Cas. 1917C, 1056, it is said:

"It is too clear for extended discussion that it was competent for the Legislature under the police power to regulate the use of the streets and public places by jitney operators, who, as common carriers, have no vested right to use the same without complying with a requirement as to obtaining a permit or license. The right to make such use is a franchise, to be withheld or granted as the Legislature may see fit. Dill. Mun. Corp. §§ 1210, 1229; Fifth Ave. Coach Co. v. New York, 194 N. Y. 19, 86 N. E. 824, 21 L. R. A. (N. S.) 744, 16 Ann. Cas. 695."

In Thielke v. Albee, 79 Or. 48, 153 Pac. 793, this is said:

"As has been well said in the case of Ex parte Dickey (W. Va.) 85 S. E. 781: 'The right of a citizen to travel upon the highway and transport his property thereon, in the ordinary course of life and business, differs radically and obviously from that of one who makes the highway his place of business and uses it for private gain, in the running of a stage coach or omnibus. The former is the usual and ordinary right of a citizen, a common right, a right common to all, while the latter is special, unusual, and extraordinary. As to the former, the extent of the legislative power is that of regulation; but as to the latter, its power is broader. The right may be wholly denied, or it may be permitted to some and denied to others, because of its extraordinary nature. This distinction, elementary and fundamental in character, is recognized by all the authorities.' "

In our own state the question has been put at rest by the opinion of Chief Justice Fly in the case of Greene v. City of San Antonio (Tex. Civ. App.) 178 S. W. 6, before cited. This opinion, which has been cited with approval and followed by the courts of a number of other states, states the law as follows:

"So in this case appellant has never had any vested right to use the streets of San Antonio to engage in the business of a common carrier of passengers for hire, and no right of his is infringed or invaded by the ordinance requiring certain things to be done in order to enter into

business on the streets, which have, at the expenditure of large sums, been placed by the city in prime condition for automobile travel. The streets belong to the public, the city being its trustee, and no private individual or corporation has a right to use such streets for the prosecution of a business without the consent of the trustee and a compliance with the conditions upon which the permission to so use them is given."

In the case of Ex parte Bradshaw, 70 Tex. Cr. R. 166, 159 S. W. 259, our Court of Criminal Appeals adopts and follows this view of the law.

[10] There is nothing unreasonable in the classification made in the ordinance of the character of vehicles which are denied permission to use the streets for conducting the jitney business.

Our conclusion is that the ordinance cannot be held unreasonable or discriminative, and must be held to be a valid exercise of the police power of the city government.

The judgment is affirmed.

Affirmed.