# Reo Bus Lines Company v. Southern Bus Line Company.

(Decided May 12, 1925.)

## Appeal from Fayette Circuit Court.

1.  Venue—Jurisdiction of Violations of Automobile Transportation Companies Act Not Exclusive in Franklin Circuit Court.—In proceeding based on violations of Acts 1924, c. 81, regulating automobile transportation companies, jurisdiction of circuit court of county of residence of parties, and where alleged infractions occurred, over cases not involving appeals from decisions of highway commission, could be maintained, notwithstanding under section 5 Franklin circuit court is given exclusive jurisdiction of appeals from highway commission.

2.  Carriers—Regularly Licensed Automobile Transportation Company May Enjoin Competitor Violating Act.—Automobile transportation company, having paid fees prescribed by Acts 1924, c. 81, section 19, and submitted to control and supervision of state highway commission as provided in sections 2 and 3, and thereby attained a right to operate under act in nature of franchise, may protect itself from unlawful interference and competition by injunction against one who is unlawfully attempting to exercise similar right.

3.  Corporations—A business Affected with Public Use May be Regulated by the State.—A business affected with public use may be regulated by the state.

4.  Highways—Public Highways are Public Property, and their Regulation and Use is Proper Exercise of Police Power.—Public highways are public property established, constructed, and maintained at public expense and use, and the state may by general law regulate their use and the character of vehicles to be operated thereon as proper exercise of police power.

5.  Carriers—Unrestrained Use of Highways for Profit of Carriers May be Regulated.—Common carriers engaged in transportation of persons or property for profits have no vested or inherent right in highways, and their unrestrained use is equivalent to appropriation of public property for private use, which may be prohibited or regulated by the legislature.

6.  Monopolies—Motor Vehicle Transportation Act Held Not to Create Monopoly so as to be Unconstitutional.—Acts 1924, c. 81, subjecting auto transportation companies, which are in themselves common carriers subject to public control, to control of state highway commission, held proper exercise of right of control, resulting from public ownership of highways, and not unconstitutional or creating monopoly, as companies, in view of the public service required of them, are entitled to reasonable profit and protection from unfair competition.

7. Carriers—Cars Seating Five Persons or Less Not Subject to Provisions of Auto Transportation Act Except as to Payment of Fees.—Acts 1924, c. 81, section 19, specifically excludes cars having seating capacity of five or less from all provisions of act except as to payment of fees, and will not be construed as intending to otherwise control transportation companies operating such cars between fixed termini.

8. Carriers—Regulation Under Auto Transportation Act of Cars with Certain Seating Capacity Depends on Seating Capacity of Cars as Operated.—Acts 1924, c. 81, subjecting all cars, engaged in transportation of passengers for hire on highways between fixed termini, except those having seating capacity for five persons or less to control of state highway commission, refers to seating capacity of cars as operated, notwithstanding there might be sufficient additional space to improvise other seating arrangements.

R. W. KEENON and SMITH & REYNOLDS for appellant.

HARRY B. MILLER, MILLER & MILLER, FRANK E. DAUGHERTY, Attorney General, and MOORMAN DITTO, Assistant Attorney General, amicus curiae, for appellee.

OPINION OF THE COURT BY JUDGE McCANDLESS—Affirming.

This action involves the validity and construction of certain sections of chapter 81 of the Acts of the General Assembly of 1924, entitled:

"An act providing for additional supervision and regulation of the transportation of persons, for compensation, over public highways by motor propelled vehicles; defining automobile transportation companies providing for additional supervision and regulation thereof by the State Highway Commission or its successors; providing for the assessment and collection of fees and taxes thereon, and providing for the enforcement of the provisions of this act and punishment for violation thereof."

The body of the act conforms closely to its title.

Section 1 defines the terms used. The application of the act being confined to "auto transportation companies" as therein defined.

Section 2 prohibits transportation of persons for compensation on public highways in motor vehicles between fixed termini except in accordance with the provisions of the act, and section 4 forbids the operation of an auto transportation company, without first having

obtained from the State Highway Commission a certificate declaring that public convenience and necessity require such operation.

By section 3 the State Highway Commission is given general supervision over auto transportation companies, including the power to grant certificates to operate, and to amend, alter and revoke same for cause shown; the right of additional classification and regulation in conformity to the act; the right to fix and alter tariff rates; the right of inspection of vehicles and to require reports and other powers of a similar nature.

Section 5 regulates the manner of procedure and gives an appeal from the decisions of the commission to the Franklin circuit court and the Court of Appeals.

Section 19 fixes a schedule of fees to be paid by such companies and classifies cars according to their seating capacity.

Other sections provide comprehensive regulations for the conduct of the business and the administration of the act and provide penalties for its violation.

The appellant is admittedly an "auto transportation company" within the meaning of the act, and has procured a permit from the State Highway Commission to operate motor vehicles between Lexington and Richmond.

The appellee has no permit but has paid the regular fees for five passenger cars and is engaged in operating motor vehicles for hire between the same points upon a regular schedule. Its cars are seven-passenger Studebakers from which have been removed the two collapsible seats, leaving seats for five passengers.

In this action appellant sought to enjoin appellee from operating such cars between fixed termini upon a regular schedule until he secured a permit as above provided. Or second, from so operating cars having places for more than five persons; or third, from permitting him to transport more than five persons at one time in a car so operated by him.

Upon proof heard the court found the cars to be as above described, but that appellant had in fact been carrying more than five passengers therein at one time and enjoined him from carrying more than that number at any one time in the future, but refused to enjoin him from operating without a permit, or from using the character of cars above described.

The plaintiff appeals from so much of the order as failed to grant all of the relief sought. Appellee is prosecuting a cross-appeal from that part of the judgment granting the injunction.

It is first urged that the Fayette circuit court was without jurisdiction to hear and determine the action. As to this it is alleged in the petition and shown in the proof that both of the parties reside in Fayette county and that the alleged infractions of the law occurred in that county.

Section 5 of the act *supra* gives the right of appeal from a decision of the highway commission to the Franklin circuit court, but does not localize the venue of any other action connected with a violation of the act. There is no contention that appellee has been refused a permit by the commission and no question of appeal from a decision of that body is involved, hence this contention is without merit.

It is next urged that the plaintiff is without right to maintain this character of action. Considering this, it has paid the fees prescribed by the statute, has submitted to the control and supervision of the State Highway Commission as provided in the act and has been granted the right to operate as a transportation company under the act. Such a grant or right is in the nature of a franchise, and though this is not exclusive it is a property right which may be protected from unlawful interference and entitles the owner to injunctive process against another who is unlawfully attempting to exercise similar rights in competition with him.

The rule is thus stated in 19 R. C. L., page 176:

"Thus it has been held in a number of cases that the grantee of a public utility franchise has such a property right as will entitle him to restrain by injunction any person or corporation attempting without authority to exercise such right in competition with him although the franchise is not exclusive. The owner of the franchise has the same security for its protection under the Constitution as has the owner of any other property. The fact that a franchise is conferred by grant from the government and may be forfeited by misuser or nonuser, does not argue that it is not property, or that it may be lost in any way or manner which will not deprive the owner of other property of his rights therein."

See also Bartlesville Elec. Lt. & Power Co. v. Bartlesville Int. Ry. Co., 29 L. R. A. (N. S.) 77; Patterson v. Wallmon, 67 N. W. 1040; Shearer v. Prewitt, 172 Ky. 356.

The act is assailed as being class legislation, in that it denies to certain persons the use of the highways unless they secure a permit from the commission, and that it tends to create a monopoly.

It is well established that a business affected with a public use may be regulated by the state. 6 R. C. L., pages 224-228 and notes. The general principle applying to this class of cases is well stated in Tiedman on Limitations, section 93, and quoted with approval in Ky. T. & T. Co. v. Murray, 176 Ky. 593.

"Whenever the business is itself a privilege or franchise not enjoyed by all alike, or the business is materially benefited by the gift by the state of some special privileges to be enjoyed in connection with it, the business ceases to be strictly private, and becomes a quasi public business, and to that extent may be subjected to police regulations."

Public highways are public property, established, constructed and maintained at public expense for public use, and naturally fall under governmental control.

Unquestionably in the exercise of the police power the state may by general law regulate the use of such highways and the character of vehicles operated thereon. This is done by the state as agent for the people, each and all of whom, subject to such regulations, have an equal right in the ordinary use and enjoyment of the highway. But it was never contemplated that the highways should form a part of the capital stock of common carriers engaged in the transportation of persons or property for profit, or that the use of the highways should be donated to them for that purpose.

Clearly these companies have no vested or inherent right in the highways, and their unrestrained use thereof is equivalent to an appropriation of public property for private use, and it is within the power of the legislature to prohibit this use or to prescribe the terms upon which it may be exercised.

In adopting the latter course the act does not impinge any constitutional provision. Green v. San Antonio (Tex.), 178 S. W. 6; Hadfield v. Lundin, 98 Wash.

657; Cutrona v. Wilmington, 124 Atl. 658; Ex Parte Dickey, 76 W. Va. 576; Gruber v. Commonwealth, 125 S. E. 427; Sheets Taxicab Co. v. Commonwealth, 125 S. E. 431; Taylor v. Smith, 32 Va. 416; Receiver v. District Court, 98 Atl. 97.

In most of these cases the validity of city ordinances was attacked, the Sheets and Gruber cases applying directly to the Virginia Transportation Act, which is essentially similar to the one under consideration, but the same principle was involved in all, some of the conclusions being thus expressed:

"The right of a citizen to travel upon the highway and to transport his property thereon in the ordinary course of life and business differs radically and obviously from that of one who makes the highway his place of business and uses it for private gain in the running of a stage coach or omnibus; the former is the usual and ordinary right of a citizen, a common right, a right common to all, while the latter is special, unusual and extraordinary." Ex Parte Dickey.

"So in this case, appellant has never had any vested right to use the streets of San Antonio to engage in the business of a common carrier of passengers for hire, and no right of his is infringed or invaded by the ordinance requiring certain things to be done in order to enter into business on the streets, which have at the expenditure of large sums been placed by the city in prime condition for automobile travel. The streets belong to the public, the city being its trustee, and no private individual or corporation has a right to use such streets for the prosecution of a business without the consent of the trustee and the compliance with the conditions upon which the permission to so use them is given." Green v. San Antonio, 178 S. W. 6.

"The streets and highways belong to the public. They are built and maintained at public expense for the use of the general public in the ordinary and customary manner. The state and city, as an arm of the state, has absolute control of the streets in the interest of public. No private individual or corporation has a right to the use of the streets in the prosecution of the business of a common carrier for private gain without the consent of the state, nor

except upon the terms and conditions prescribed by the state or municipality as the case may be. The use of the streets as a place of business or as a main instrumentality of business is accorded as a mere privilege and not as a matter of natural right."

" . . . Since the use of the streets by a common carrier in the prosecution of its business as such is not a right, but a mere license or privilege, it follows that the legislature may prohibit such use entirely without impinging any provisions either of the federal or state Constitutions."

"If any proposition may be said to be established by authority the right of the state in the exercise of its police power, to prohibit the use of the streets as a place of private business or as the chief instrumentality in conducting such business must be held so established. Nor can it be questioned that the power to prohibit includes the power to regulate, even to the extent that the regulation under given conditions may be tantamount to a prohibition." Hadfield v. Lundin, 98 Wash. 657.

"No man has the right to use the public streets as a place wherein to carry on his private business. The streets are not constructed and maintained by the public for the purpose of supplying sites and facilities for carrying on private occupations. If it were otherwise vendors of goods might with justice protest against all attempts to exclude them from the streets in the prosecution of their various businesses, notwithstanding the rights of the traveling public were being interfered with and traffic thereby obstructed." Cutrona v. Wilmington, 124 Atl. 658.

We have been cited to no authority to the contrary and feel sure that none exists. Aside from the principle above stated of public ownership of highways and the resultant right of governmental control, transportation companies included in the act are common carriers subject in themselves to governmental control, and taken in connection with the rapid development of motor transportation and the number of private vehicles using the same highways, governmental supervision is essential for the protection both of the passengers of the transportation companies and of the general public using the highways. The patrons are entitled to regular schedules, fixed transportation charges and safe equipages. That this may be had the companies are entitled to a reason-

able profit on their outlay and to be protected from unfair competition involving them in bankruptcy and leaving the public without transportation facilities.

Both the patrons of such companies and the traveling public generally are entitled to have the vehicles of the former to conform to some sort of standard and to be driven by competent chauffeurs, and in requiring this no constitutional provision is violated.

We find no merit in the contention that the act tends to create a monopoly.

Having reached the conclusion that the act is valid, the right of appellant to relief and the extent of his relief turns upon the construction of the act.

Section 1, subsection "D" defines "Auto Transportation Companies" thus:

"The term 'auto transportation company' when used in the act, means every corporation, person, firm or association of persons, their lessees, receivers or trustees, however appointed, owning, controlling, operating or managing any motor propelled vehicle not usually operated on or over rails used in the business of transporting persons for compensation, over any public highway in this state between fixed termini or over a regular route and not operating exclusively within the incorporated limits of any city or town; provided, however, that the term 'auto transportation company' as used in this act shall not include corporations or persons, their lessees, receivers or trustees, however appointed, in so far as they own, control, operate or manage taxicabs, hotel busses, school busses, busses used exclusively for funeral purposes and shall not apply to taxicab companies not operating between fixed termini or over a regular route, and shall not prohibit them from making casual trips over the route established under the provisions of this act."

Section 19 provides for the classification of motor vehicles used by such companies and the payment of fees thereon according to the seating capacity of the car. The minimum fee being "for each motor vehicle carrying passengers for hire on the public highways of this Commonwealth capable of carrying five passengers or less, $2.50 for each and every passenger seat and space." The rate is graduated upward for cars having a greater seat-

ing capacity. This section concludes: "No provision of this act except section 19, providing for payment of fees, shall be applicable to any motor vehicle having a carrying capacity of five passengers or less."

In the original act this section required payment of fees only upon motor vehicles operating between fixed termini or over a regular route capable of carrying six passengers or more, and both of the provisions quoted were amendments thereto.

It is ingeniously argued that the legislature intended to control all transportation companies operating between fixed termini or over regular routes, regardless of the size of the cars, and that the provision last quoted was a revenue measure intended to apply to taxicabs, which as a rule have a small seating capacity and which were not intended to be otherwise regulated. We cannot agree with this construction.

It was the evident purpose of the legislature to collect from such companies fees as revenue on cars having a seating capacity of five persons or less, but the language quoted directly and positively excludes the smaller cars from all the provisions of the act except as to the payment of fees.

This language is clear and unambiguous and must be construed to mean what it says. It is true that the smaller cars may compete with other cars of the regular transportation companies, but the wisdom of permitting such unregulated competition is a matter addressed to the legislature. The court can only construe the act as written.

It is next urged that the words "having a carrying capacity of five persons or less" refer only to vehicles constructed with seats having such capacity; that although the car may have only a front and back seat intended for five persons, yet if it embraces sufficient additional space to improvise other seating arrangements that it does not fall within the exception of the statute, and that the removal of the collapsible seats from a seven-passenger car, leaving a seating capacity of only five passengers, does not change the nature of the car, which is not thereby included in the exception provided.

While there is room for argument as to this we think the statute is intended to refer to the seating capacity of the cars as operated. True the operator is thus afforded an opportunity to improvise extra seats, increas-

ing the capacity of the vehicle, but if he does so he violates both the letter and spirit of the act and in so doing becomes liable for the penalties prescribed by the act, and for future violations, appellee in this case would also lay himself liable for a contempt of court.

Perceiving no error the judgment is affirmed both on the original and cross appeals.