STATE OF FLORIDA, EX REL. CLAYTON PENNINGTON, *Plaintiff in Error,* v. H. LESLIE QUIGG, CHIEF OF POLICE OF MIAMI, FLORIDA, *Defendant in Error.*

En Banc.

Opinion Filed December 6, 1927.

*A. Aronovitz* and *A. H. Farr,* Attorneys for Plaintiff in Error;

*Fred H. Davis,* Attorney General, and *Roy Campbell,* Assistant, and *John W. Watson, Jr.,* and *Loftin, Stokes & Calkins,* Attorneys for Defendant in Error.

BUFORD, J.—This is a writ of error to a judgment pursuant to a writ of *habeas corpus* remanding the petitioner in the court below, the plaintiff in error here, to the custody of the Chief of Police of the City of Miami, Florida.

Pennington was charged with violation of city ordinance No. 700 and especially with having violated the provisions of section 5 of the said ordinance.

Section 5. of this ordinance is as follows:

"Section 5. That there is hereby designated as a congested area that portion of the Down-Town Zone as defined in Article 1, Section 4 of Traffic Regulations of the City of Miami, Florida, established April 1st, 1926, bounded on the South by S. W. 3rd Streed and S. E. 3rd Street, on the North by N. W. 5th Street and N. E. 5th Street, on the West by N. W. 2nd Avenue and S. W. 2nd Avenue and on the East by N. E. 2nd Avenue and S. E. 2nd Avenue, which congested area includes the above mentioned streets and avenues. No permit shall be issued for a motor vehicle commonly known as a "jitney" or for any motor vehicle having a rated seating capacity of less than fifteen passengers to operate within said congested area or upon any street within said congested area."

The ordinance was enacted under authority of the provisions of the City Charter as contained in Section 3, subparagraph IIII of Chapter 10,847 Laws of Fla., Special Acts of the Legislature of 1925, which is as follows:

Section 3.

The City of Miami shall have power * * *

"To license, control, tax and regulate traffic and sales upon the streets, sidewalks and public places within the city and the use of space in such places and to regulate, suppress and prohibit hawkers and peddlers and beggers upon such streets, sidewalks and public places; and to license and cause to be registered and control, tax, regulate or to prohibit in designated streets, or parts of streets, carriages, omnibuses, motor busses, cars, wagons, drays, jitney busses and other vehicles, and to license, tax and cause to be registered and control the drivers thereof and fix the rate to be charged for the carriage of persons and property within the city and to the public works beyond the limits of said city; and to authorize the City Manager, or the Chief of Police, to make and promulgate regulations for traffic on the streets, or parts of the streets, during such hours as may be necessary or convenient, and to provide for parking spaces on the streets, and to at any time discontinue the right to the use of such parking spaces and to regulate or vacate or discontinue the use of the same; and to require all vehicles for the carriage of persons for hire to execute a bond to be conditioned as required by ordinance for the protection of passengers and of the public and to make such bond inure to the benefit of persons or property which may be injured or damaged by the operation of such vehicles for hire; and to require such bond with such surety to be furnished by all vehicles for hire operating upon the streets of the City of Miami, whether such operation be wholly within the limits of the City of Miami, or between the City of Miami, and other cities and towns, or places outside of the City of Miami."

It will be observed that the Legislature conferred upon the City of Miami the power "to control, tax, regulate or

to prohibit in designated streets, or parts of streets, carriages, omnibuses, motor busses, cars, wagons, drays, jitney busses and other vehicles."

That part of the ordinance out of the enforcement of which this case originated finds ample foundation for its support in the provisions of the Legislature charter of the City of Miami above referred to. This case is differentiated from the case of Quigg v. State ex rel. Redel, 84 Fla. 164, 93 Sou. 139, because of the difference in the City Charter provisions which obtained at the time that case originated and those provisions which were included in the charter by that part of Chapter 10,847, *supra*. It is contended that the ordinance under which plaintiff in error is held is invalid upon nine (9) separate grounds, to-wit:

"1.   That said ordinance is unreasonable;

2.   That said ordinance is discriminatory;

3.   That said ordinance is class legislation;

4.   That said ordinance is confiscatory;

5.   That said ordinance is arbitrary;

6.   That said ordinance violates constitutional provisions in that it deprives persons of liberty or property without due process of law;

7.   That the Legislature had no power under the Constitution to grant the power exercised to the City;

8.   That an ordinance entitled "An ordinance to Regulate" does not include power to prohibit;

9.   That said ordinance vests arbitrary power in the City Manager."

We have considered the ordinance upon each of the grounds of attack and find that it must be upheld as a valid ordinance under the authority vested in the city.

The so called "jitney bus" has come to be recognized throughout the country as a motor-driven trackless vehicle operated over certain routes between two or more particu-

lar points or places, which carries passengers for hire and reward to and from terminal points and intermediate points. They are common carriers and are therefore, subject to appropriate governmental regulations. This Court in Dutton Phosphate Co. v. Priest, 67 Fla. 370, 65 Sou. 282, say:

"The provisions of the organic law that no person shall be deprived of life, liberty or property without due process of law, nor denied the equal protection of the laws, are not intended to hamper the States in the discretionary exercise of any of their appropriate sovereign governmental powers, unless substantial private rights are arbitrarily invaded by illegal or palpably unjust, hostile and oppressive exactions, burdens, discriminations or deprivations."

And further, in the same opinion, the Court say:

"All property rights are held and enjoyed subject to the fair exercise of the State's police power to establish regulations that are reasonably necessary to secure the general welfare of the State."

And again:

"The wisdom and necessity, as well as the policy, of a statute are authoritatively determined by the Legislature."

In King Lumber Co. v. A. C. L. R. R. Co., 58 Fla. 292, 50 Sou. 509, it is said:

"The rule requiring classifications made by statutes to be reasonable has reference to those who are affected by a regulation and not merely to the subject regulated."

"Where a regulation affects alike all similarly situated with reference to the subject regulated a wide descretion is accorded to the Legislature in selecting subjects for regulation. A subject of Legislative regulation may be comprehensive or restrictive where constitutional provisions are not violated."

In Harrison et al. v. Big Four Bus Lines 288 S .W. 1049,

the Circuit Court of Appeals of Ky., in construing a provision of the State statute relative to the regulation of motor vehicles for hire, quoted with approval the part of the opinion in the case of Leo Bus Lines Co. v. Southern Bus Line Co., 209 Ky. 40, 272 S. W. 18, as follows:

"It was the evident purpose of the Legislature to collect from such companies fees as revenues on cars having a seating capacity of five persons or less, but the language quoted directly and positively excludes the smaller cars from all of the provisions of the Act except as to the payment of fees. This language is clear and unambiguous and must be construed to mean what it says. It is true that the smaller cars may compete with other cars of the regular transportation companies, but the wisdom of permitting such unregulated competition is a matter addressed to the Legislature. The Court can only construe the Act as written."

In Ex Parte Dickey, Supreme Court of Appeals of West Virginia, reported in 85 S. E. 781, say:

"All rights of common carriage on highways such as those conducted by means of drays, omnibuses, hackney-coaches and taxicabs, are legislative grants or concessions, much lower in legal quality and dignity than the rights of ordinary use to which highways are incidentally subjected by citizens in travel and the prosecution of their business."

"To accomplish the exclusion of automobiles from the use of certain streets or public ways in cities and towns, the Legislature of Massachusetts deemed it necessary to pass a statute authorizing the aldermen of the cities and selectmen of the towns to make such regulations, subject to a power of review in the state highway commission. The constitutionality of this statute was questioned in commonwealth v. Kingsbury, 199 Mass. 542, 85 N. E. 848, 127 Am. St. Rep. 513, but the court upheld it.

"It would be inconsistent with this theory to say the Legislature, in committing to county courts, villages, towns and cities the control of such portions of the highways as happen to be within their limits, intended to make them absolute owners and proprietors of the same, with power to do as they please with them. Such municipalities own such portions of the highways for such public uses and purposes as the Legislature, by express declaration or implication, recognizes as lawful. They hold them as agencies of the State for such public uses, and therefore, they can limit, restrict or regulate such uses in such manner and to such extent only as the Legislature has authorized. For the promotion of local comfort, convenience and prosperity the Legislature has empowered them to establish, maintain and improve highways and given them authority to raise money by taxation for such purposes; and, at the same time, it has compelled them to assume, not only the burden of construction and maintenance, but also liabilities for injuries occasioned by defects. Nevertheless, it would be inconsistent with sovereign legislative power and control over the highways to infer from this agency legislative purpose to confer upon local municipalities power to deny any right of the public in them. Therefore, such authority does not exist, unless it has been expressly or impliedly conferred. In the light of these general principles and conclusions the provisions of the charter of the city of Huntington, applicable to the subject, must be read and interpreted. The most comprehensive one of these, and the only one it is deemed necessary to consider, is found in Section 68 of Chapter 3 of the Acts of 1909. After having authorized the commissioners to require a city license for anything for which a state license is required and to impose a tax thereon for the use of the city, it proceeds as follows:

‘ ‘‘And the board of commissioners shall have the power to grant, refuse or revoke any such license of owners or keepers of hotels, carts or wagons, drays and every other description of wheeled carriages, kept or used for hire in said city, and to levy and collect tax thereon and to subject the same to such regulations as the interest and convenience of the inhabitants of said city; in the opinion of the board of commissioners, may require.’’ ’

Power in the city to subject all kinds of wheeled carriages kept for hire to such regulations as the interest and convenience of the inhabitants thereof may require, in the opinion of the board of commissioners, and to refuse them license, is as broad as the power of the Legislature itself over them. They, with the owners and keepers of hotels, are segregated from all other subjects of license and taxation, by the terms of the stateute, and put into a separate and distinct class over which the city is accorded full and complete power.’’

In Fifth Avenue Coach Co. v. City of New York, 194 N. Y. Reports 19, the court say:

‘‘An ordinance prohibiting the display of advertisements upon wagons and other vehicles, except business notices upon ordinary business wagons engaged in the usual business or work of the owner and not used merely or mainly for advertising, is a proper and reasonable exercise of the authority to regulate the business conducted in the streets of the city, vested in the board of aldermen.’’

In Davis v. City of Houston, the Court of Civil Appeals of Texas, reported 264 S. W. 625, and ordinance in many respects like the one here under consideration was challenged:

‘‘Where a city charter gave the city general powers of local government and control of its streets in general, and control of franchises for the use of streets, in the exercise

of its police power it could by ordinance prohibit the use of jitneys for hire.

The ordinary use of a city's streets by a citizen is an inherent right which can not be taken from him by the city, and may only be controlled by reasonable regulation, but the right to use the streets for conducting thereon a private business is not inherent or vested and can only be acquired by permission or license from the city, whose power to withhold such permission or license is an essential and necessary prerogative of municipal government.''

The enunciation of the law as above quoted has been approved in Gill v. City of Dallas, Court of Civil Appeals of Texas, reported in 209 S. W. page 29, Ex Parte Cardinal, Supreme Court of Cal. reported in 150 Pacific 348; Auto & Transit Co. et al. v. City of Fort Worth Court of Civil Appeals of Texas, 182 S. W. 685; Public Service Commission v. Booth, 156 N. Y. Sup. 140; Ex Parte Bogle v. Court of Criminal Appeals of Texas, 179 S. W. 1193. State ex rel. McAuley v. York 90 Fla. 625-106 So. 418.

So, we must hold that neither the ordinance or the legistive Act which authorized its enactment is fatally unreasonable.

The next question presented is whether or not the ordinance is discriminatory or constitutes class legislation, both of which questions must be answered in the negative.

In Dutton Phosphate Co. v. Priest, *supra,* this Court say:

''The legislature has a wide discretion in classifying the subjects of police regulation; and a legislative classification will not be annulled by the courts unless it is wholly without a reasonable or practical basis. Unless a legislative regulation is applicable to some persons and not to others under essentially similar conditions so as to make the classification an arbitrary exercise of the powers of government

that in material substance and effect unjustly discriminates between persons similarly conditioned with reference to the subject regulated, there is no denial of the equal protection of the laws. See Davis v. Fla. Power Co., 64 Fla. 246, 60 South. Rep. 759; Lindsley v. Natural Carbonic Gas Co., 120 U. S. 61, 31 Sup. Ct. Rep. 337; Central Lumber Co. v. State of South Dakota, 126 U. S. 157, 33 Sup. Ct. Rep. 66; Peninsular Industrial Ins. Co. v. State, 61 Fla. 376, 55 South. Rep. 398; Louisville & N. R. Co. v. Melton, 218 U. S. 36, 30 Sup. Ct. Rep. 676.''

In Ex Parte Dickey, *supra,* the Supreme Court of West Virginia, say:

''The right of a citizen to travel upon the highway and transport his property thereon, in the ordinary course of life and business, differs radically and obviously from that of one who makes the highways his place of business and uses it for private gain, in the running of a stage coach or omnibus. The former is the usual and ordinary right of a citizen, a common right, a right common to all, while the latter is special, unusual and extraordinary. As to the former, the extent of legislative power is that of regulation; but, as to the latter, its power is broader. The right may be wholly denied, or it may be permitted to some and denied to others, because of its extraordinary nature. This distinction, elementary and fundamental in character, is recognized by all the authorities.''

In Ex Parte Cardinal, *supra,* the court say:

''It cannot successfully be disputed that the city and county of San Francisco has the right in the exercise of its police power, to enact such reasonable regulations for the safety of the public as are not in conflict with general laws, to regulate the use of vehicles on its public streets. While in doing this it may not arbitrarily discriminate against any species of vehicle, it may classify vehicles for

the purpose of regulation in such manner as is reasonable, in view of the character and manner of use and the danger to the public to be apprehended, and such classification must be upheld by the courts unless it is manifestly unreasonable or arbitrary. No reasonable person will dispute the proposition that, in view of many circumstances peculiar to automobiles and their use, regulations specially applicable thereto will be sustained. And it is manifest that as to automobiles there may be circumstances existing, by reason of the manner and character of their use on the streets, that will warrant, in the interest of the safety of the public, special regulations as to those used for a particular purpose and in a particular way. The only limitation in the matter of any such classification is that the same must be reasonable—that there is some difference between the vehicles embraced in the class attempted to be created, and other vehicles, that bears a proper relation to the regulations prescribed for those coming within the class. If the classification is reasonable, including all that may fairly be said to be similarly situated and affecting alike all of those, there is no forbidden discrimination. The question of classification is primarily one for the legislative power, to be determined by it in the light of its knowledge of all the circumstances and requirements, the presumption in the courts is in favor of the fairness and correctness of the determination by the legislative department, and the courts are not privileged to overturn that determination unless they can plainly see that the same was without warrant in the facts.''

See also Jackson v. Neff, 64 Fla. 326, 60 Sou. 350; Park v. Morgan, 54 Fla. 414, 63 Sou. 417, and Harrison v. Big Four Bus Lines, *supra.*

In Davis v. the City of Houston, *supra*, the court say:

''In our own State the question has been put at rest by

the opinion of Chief Justice Fly in the case of Greene v. City of San Antonio (Tex. Civ. App.), 178 S. W. 6, before cited. This opinion, which has been cited with approval and followed by the courts of a number of other States, states the law as follows:

" 'So in this case appellant has never had any vested right to use the streets of San Antonio to engage in the business of a common carrier of passengers for hire, and no right of his is infringed or invaded by the ordinance requiring certain things to be done in order to enter into business on the streets, which have, at the expenditure of large sums, been placed by the city in prime condition for automobile travel. The streets belong to the public, the city being its trustee, and no private individual or corporation has a right to use such streets for the prosecution of a business without the consent of the trustee and a compliance with the conditions upon which the permission to so use them is given.' "

In the case of Ex Parte Bradshaw, 70 Tex. Cr. R. 166, 159 S. W. 259, our Court of Criminal Appeals adopts and follows this view of the law. There is nothing unreasonable in the classification made in the ordinance of the character of vehicles which are denied permission to use the streets for conducting the jitney business.

Our conclusion is that the ordinance can not be held unreasonable or discriminative, and must be held to be a valid exercise of the police power of the city government."

The question of whether or not the ordinance is confiscatory, arbitrary or deprives persons of liberty or property without due process of law each are answered in the negative upon authority of the cases above cited and also on authority of the opinion in the case of State ex rel McAuley v. York, 90 Fla. 625, 106 Sou. 418; also Frick v. City of Cary, Supreme Court of Indiana, 135 N. E. 346.

The question as to whether or not an ordinance entitled "An Ordinance to Regulate" may include the "power to prohibit" the use of the regulated instrumentality within stated limits must be answered in the affirmative by following the principles of law enunciated in case of Ex Parte Pricha, 70 Fla. 265, 70 Sou. 406, in which the court say:

"If the title to the Act fairly gives notice of the subject of the Act, so as reasonably to lead to an inquiry into the body of the bill it is all that is necessary. The title need not be an index to the contents of the bill or Act."

"Under the title of 'An Act to regulate the sale of furnishing of intoxicating liquors, wines or beer, and prescribing a penalty for the violation of certain of its provisions, and repealing laws in conflict herewith' the Legislature may make the following section a portion of such Act, without violating the provisions of Section 16 of Article 3 of the State Constitution: 'Sec. 7. That no dealer in intoxicating liquors, wines or beer, shall himself drink, consume or give away any intoxicating liquor wine or beer in any quantity on the premises where such liquor, wine or beer is sold, nor shall he permit or suffer any assistant, servant, employee, purchaser or any person whomsoever to drink, consume or give away any intoxicating liquor, wine or beer on such premises, nor shall he provide any other premises with the intent to defeat the policy of this Act.' "

See also Ex Parte Lewinsky, 66 Fla. 324, 63 Sou. 577.

It will be observed that this prohibition to operate jitney-busses of carrying capacity of less than fifteen (15) passengers within the designated area is at most only a regulation governing the operation of such jitney busses within the city limits of the City of Miami.

The question of whether or not the Legislature had

power and authority to grant the exercised power to the City of Miami can not be seriously questioned. Article 8, Section 8 of the Constitution of Florida provides that:

"The Legislature shall have power to establish and to abolish municipalities, to provide for their government, to prescribe their jurisdiction and powers, and to alter or amend the same at any time."

This provision of the Constitution necessarily confers on the Legislature power to delegate the proper governmental functions to the municipalities created.

In Williams v. Eggleston, 170 U. S. 304, 42 Law Ed. 1047, the court say:

"The power of the Legislature over all local municipal corporations is unlimited, save by the restrictions of the State and Federal Constitutions."

It appears that that part of the ordinance of the City of Miami, the validity of which is challenged by the petitioner, is valid and enforceable.

The judgment of the circuit judge remanding the petitioner to the custody of the chief of police should be affirmed and it. is so ordered.

Affirmed.

ELLIS, C. J., AND WHITFIELD, TERRELL, STRUM AND BROWN, J. J., concur.