THE STATE OF FLORIDA, *ex rel.* H. S. McAULEY, *Plaintiff in Error*, v. D. B. YORK, CHIEF OF POLICE OF THE CITY OF TAMPA, FLORIDA, *Defendant in Error*.

## En Banc.

## Opinion Filed November 28, 1925.

1. An ordinance prohibiting taxi-cab stands on the streets within a certain area in a city, but not prohibiting their free use otherwise therein, and providing for the location of stands at other places outside of the designated area, is not void as constituting a prohibition rather than a regulation of the use of taxicabs within the designated area; the power of the city to regulate such vehicles being conceded.

2. When the municipal power to regulate is shown to exist, a regulatory ordinance valid on its face and pursuant to the power, will be presumed to be applicable to, and justified by, local conditions, unless the contrary is made clearly to appear.

3. When an ordinance is within the grant of power to the municipality, the presumption is that it is reasonable, unless its unreasonable character appears on its face, and the person attacking it as unreasonable or unjustly discriminatory must assume the burden of affirmatively showing that as applied to him it is unreasonable, or unfair and oppressive.

4. Where an ordinance prohibiting taxi-cab stands on the streets within a certain area of a city, permits the parking of automobiles by the general public on said streets and provides for certain spaces in each business block in said area where vehicles carrying freight and express for hire may stop for the loading and unloading of merchandise from the respective places of business in such blocks, such latter provisions do not constitute an unjust discrimination against the owners of taxi-cabs thus prohibited from having a taxi-cab stand within such designated area.

5. There is a distinction between allowing the parking of ordinary vehicles by the general public along city streets and

allowing owners or operators of taxi-cabs for hire to appropriate a certain portion of a busy city street as a location for the conduct of their private business, where their taxi-cabs are kept in the intervals when they are not employed in the carriage of persons or property, and while awaiting or soliciting such employment.

6. It is a matter of common knowledge that cities usually allow abutting owners or their tenants engaged in the mercantile business reasonable means of ingress and egress between their stores or places of business, and the public street for the unloading and loading and the carrying of freight thereto and therefrom; indeed, this is a right, which, though subject to reasonable regulations, cannot ordinarily be entirely denied.

7. It is not the province of the writ of habeas corpus to take the place of a writ of error, and to bring in review any irregularity or mere error of procedure committed by a judicial tribunal having jurisdiction of the cause and the person and under whose judgment a party claiming to be unlawfully restrained of his liberty may be held.

A Writ of Error to the Circuit Court for Hillsborough County; F. M. Robles, Judge.

Final order affirmed.

*Sparkman & Knight* and *Whitaker Brothers,* for Plaintiff in Error;

*A. T. Stuart,* for Defendant in Error.

BROWN, J.—The petitioner was convicted in the municipal court of the City of Tampa of violating Section 46 of said city "by having a stand for taxicab for hire on the street within two blocks of Franklin Street, within the city limits of the City of Tampa," and sued out a writ of *habeas corpus* in the Circuit Court of Hillsborough County, addressed to the Chief of Police, York, alleging in his petition

that the said ordinance was invalid. Return was duly made, and on hearing, the petition was dismissed, the petitioner remanded to custody, and petitioner was allowed and took a writ of error.

The ordinance attacked provides, *inter alia,* that "no taxicab, hack, bus or other vehicle will be permitted to have a stand within two blocks of Franklin Street. Such stands may be located at other places, provided the written consent of abutting property owners is obtained, after which the limits of said stand will be designated by the Chief of Police so as not to interfere with or obstruct traffic," also prohibiting abutting owners from receiving rents or compensation for the use of the public streets in front of their property, and prohibiting taxi drivers from verbally soliciting business on streets other than at stands.

Petitioner's counsel contends that this ordinance prohibits the use of taxicabs on certain streets, or within a certain area, whereas the city only has the charter power to *regulate* such use. We do not so understand the language of the ordinance. While inartificially drawn, it clearly intends only to prevent the establishment of taxicab stands within the designated area, and the solicitation of business on the streets at places other than such regular stands as may be established outside such designated area. It is contended that the city has all power necessary to regulate vehicles of all kinds on the streets of the city under Section 1871 of the Revised General Statutes of 1920, and also under chapter 9925 of the Laws of 1923, and other acts conferring corporate powers. This ordinance does not prohibit the use of taxicabs on any of the city streets. The prohibition of taxicab stands, or the solicitation of business, on the streets within certain crowded areas, or areas of heavy and constant traffic, but allowing their free movement and use therein, is in the nature of a regulation, rather than a prohibition, of the use of such vehicles, and hence within

the corporate powers of regulation. State v. Barbelais, 101 Me. 512, 64 Atl. Rep. 881; Commonwealth v. Ellis, 158 Mass. 555, 33 N. E. Rep. 651; Shreveport v. Dantes, 118 La. 113, 42 South. Rep. 716; Dillon's Municipal Corporations (5th ed.) Secs. 712, 1166-7; 19 R. C. L. 846-7, 849. To allow taxicab stands to be located indiscriminately, regardless of the traffic conditions on the streets, might result in creating practically continuous obstructions to travel and seriously limit the area for the passage of traffic on the main arteries of a city, greatly to the detriment of the public welfare. And to hold that such matters are beyond an existing municipal power to regulate the use of streets and vehicles, when reasonably and fairly exercised, would be tantamount to holding that the city could not prevent obstructions to traffic on its main thoroughfares. In the instant case, we cannot assume that the quoted provision of the ordinance was arbitrarily adopted by the governing body of the city without regard to the reasonable requirements of local conditions. *Per contra,* when the municipal power to regulate is shown to exist, a regulatory ordinance valid on its face, and pursuant to the power, will be presumed to be applicable to and justified by local conditions, unless the contrary is made clearly to appear. Says Judge Dillon (Vol. 2, Sec. 592, Dillon Munic. Corp.): "It is of course within the power of the court to declare an ordinance to be *unreasonable and void on its face* by a mere inspection of the ordinance, if it is clearly of that character because of the inherent nature of its provisions. But the power of the court to declare an ordinance void because it is unreasonable is one which must be carefully exercised. When the ordinance is within the grant of power of the municipality, the presumption is that it is reasonable, unless its unreasonable character appears upon its face. But the courts will declare an ordinance to be void because unreasonable *upon a state of facts being shown* which make it unreasonable. If the ordi-

nance is not inherently unfair, unreasonable or oppressive, the person attacking it must assume *the burden of affirmatively showing* that as applied to him it is unreasonable, unfair and oppressive.'' State *ex rel.* Ellis v. Tampa Water Works Co., 56 Fla. 858, 47 South. Rep. 358; Hardee v. Brown, 56 Fla. 377, 47 South. Rep. 834. The petition in this case does not negative the existence of traffic conditions, within the area wherein the ordinance prohibits the location of taxicab stands, which might have justified the passage of the ordinance. Therefore, in the absence of allegations or proof to the contrary, this court must presume that such conditions did exist, and the ordinance therefore reasonable.

It is further alleged in the petition that this section of said ordinance is void because under other sections of the ordinance, automobiles other than taxicabs are permitted to park on streets within said area, and, further, that the city has marked off spaces on the pavement and curbing in certain business blocks where automobiles and other vehicles carrying freight and express for hire may, in the language of the petition, ''park and do business on said streets,'' (though the language of the ordinance, which is made a part of the petition, was that such space was reserved ''for the loading and unloading of merchandise from the respective places of business in'' such blocks,) and that this constitutes an unjust discrimination against petitioner and denies him the equal protection of the laws. These allegations alone are not sufficient to show an unjust discrimination against petitioner and denies him the equal protection of the laws. These allegations alone are not sufficient to show an unjust discrimination in the exercise of the conceded municipal power of regulation. It is a matter of common knowledge that the general public, or that portion of same using automobiles as a private means of transport, are quite generally permitted to park their vehicles along

630    SUPREME COURT OF FLORIDA.

State ex rel. McAuley v. York—Opinion of Court.

the sides or in the center of city streets, though in many
cases for a limited time only, and in some cases no parking
is permitted on certain portions of streets where there is
great density of traffic.   There is a distinction between
allowing the parking of ordinary vehicles by the general
public along streets and allowing owners or operators of
taxicabs operated for hire to appropriate a certain portion
of a busy street as a location for the conduct of their pri-
vate business, where their vehicles are kept in the intervals
when they are not employed in the carriage of persons or
property, and while awaiting, or soliciting, such employ-
ment.   This distinction was long ago made, as to standing
places of more primitive vehicles, to-wit, stage coaches, by
Lord Ellenborough in Rex v. Cross, 3 Campb. 224, who
characterized it as "making a stable-yard of the King's
highway."   Nor would any unjust discrimination against
the petitioner necessarily appear if the city allowed a cer-
tain reasonable space in each business block where freight-
carrying vehicles could park to load and unload freight
going to or from stores abutting the street. It is a matter of
common knowledge again, that cities usually allow abutting
owners or their tenants engaged in the mercantile business
reasonable means of ingress and egress between their stores
and places of business and the public street for the unload-
ing and the carrying of freight thereto and therefrom.  In-
deed, this is a right which, though subject to reasonable
regulation, cannot ordinarily be entirely denied.   Dillon's
Municipal Corporations, Secs. 1016 and 1123; Donovan v.
Pennsylvania Co., 199 U. S. 279, 26 Sup. Ct. Rep. 91, 50 L.
Ed. 193; Kress and Co. v. City of Miami, 78 Fla. 101, 82
South. Rep. 775; 1 Am. & Eng. Ency. of Law (2nd ed.) 225.
In the carriage of such freight to and from their stores, mer-
chants may of course use their own or hired automobiles.
The petition does not allege that such hired vehicles are
allowed to use such space as a stand or for the solicitation

of business. Some such considerations as the above may well have caused the city authorities to authorize, under proper circumstances, the practices which the petition attacks. At least, the petition does not negative the existence of these conditions, or others which might have formed a reasonable basis for such ordinance, nor does it allege any facts which show that the matters complained of constitute unreasonable or unfair discrimination against petitioner.

The views hereinabove expressed are not in conflict with the principles announced in Malone v. City of Quincy, 66 Fla. 52, 62 South. Rep. 922; or Curry v. Osborne, 76 Fla. 39; 79 South. Rep. 293; or Quigg v. State, 84 Fla. 164, 93 South. Rep. 139. The first case dealt with an entirely different class of facts, and the last two cases dealt with ordinances totally prohibiting the use of jitney buses on certain streets of the City of Miami, which is an entirely different question from the one here presented.

It is finally contended that the court below erred in not permitting the petitioner to introduce evidence in support of his petition. If there was error in this, it was error without injury, as from what we have said above it appears that if every fact alleged in the petition be admitted as true, the invalidity of section 46 of the ordinance is not shown. However, there is nothing in the record indicating a refusal to hear evidence excepting a recital in the order dismissing the petition to the effect that as the petition, writ and return only presented questions of law, it was not necessary that any evidence be submitted in connection with same. Furthermore, it is not the province of a writ of *habeas corpus* to take the place of a writ of error, and to bring in review any irregularity or mere error of procedure committed by a judicial tribunal having jurisdiction of the cause and the person and under whose judgment a party claiming to be unlawfully restrained of his liberty may be held. Ex parte Bowen, 25 Fla. 214, 6 South. Rep. 65; State

v. Vasquez, 49 Fla. 126, 38 South. Rep. 830; State *ex rel.* Swift v. Dillon, 75 Fla. 785, 79 South. Rep. 29; Dukes v. State, 81 Fla. 247, 88 South. Rep. 474.

Final order affirmed.

WHITFIELD, ELLIS, TERRELL AND STRUM, J. J., concur.