J. B. JARRELL, individually and trading and doing business as ECONOMY CAB COMPANY, v. ORLANDO TRANSIT COMPANY.

167 So. 664.

.Division B.

Opinion Filed April 24, 1936.

*Joe Akerman* and *Dickinson & Dickinson,* for Appellant; *Baker & Thornal,* for Appellee.

TERRELL, J.—This case grows out of a controversy between appellant, a taxicab company, and appellee, a bus company, over the effect of a franchise held by the latter

to operate over certain streets of the City of Orlando, Florida.

It appears that the City of Orlando granted the Orlando Transit Company an exclusive franchise to operate a bus service for a fare not exceeding ten cents per passenger over designated streets to the exclusion of Economy Cab Company and other carriers charging less than fifteen cents per passenger. This franchise was granted pursuant to Chapter 10980, Special Acts of 1925, the pertinent part of which is as follows:

"Authority is hereby conferred upon the City Council or other governing body of the City of Orlando to grant to any person, persons, firm, or corporation, an exclusive franchise for the use of the streets of the said city for the operation of automobile busses subject to the terms, conditions, and restrictions of this Act and of lawful ordinances of said city to be enacted in accordance herewith."

Other sections of the Act limit such franchise to ten years, authorize the city to limit and regulate the class of equipment used in their operation, and require the holder of the franchise to abide by the regulations imposed on it by the city. Section 1871, Revised General Statutes of 1920, Section 2981, Compiled General Laws of 1927, vest general powers in the city to regulate the use of such franchises.

After the franchise was granted appellant, who was a duly licensed taxicab operator, but who had not secured a permit to operate by submitting its equipment to the city for inspection as the ordinance directs, commenced the operation of a taxicab service over the city including those streets and avenues on which Orlando Transit Company held the exclusive franchise. The theory of appellant was that there was a clear distinction between the operation of a bus busi-

ness and a taxicab business and that both might operate in the same field regardless of the exclusive franchise held by appellee.

Feeling that the operation of appellant's taxicab business was in violation of its franchise, Orlando Transit Company filed its bill of complaint praying that appellant, defendant below, be restrained from soliciting passengers for transportation along the routes covered by its franchise at a fare of ten cents per passenger and that said defendant be further restrained from cruising over the routes covered by complainant's franchise ahead of its busses and soliciting passengers for hire at a fare less than fifteen cents per passenger. An answer was filed, testimony was taken, and on final hearing the equities were found to be with the complainant and the relief prayed for was granted.

This appeal is from the final decree enjoining the defendants and their agents from engaging in the business of picking up passengers and transporting them for hire at a fare of ten cents per passenger along the designated bus routes of the plaintiff, or from operating their taxicabs over the bus routes of the plaintiff for the purpose of soliciting passengers, or from systematic cruising over the bus routes of complainant and taking on any passengers for a fare less than fifteen cents per person, provided, that passengers may be delivered to any points along said bus line if not taken on in violation of this decree.

Briefs of counsel illuminate a multitude of questions, but the nub of the controversy is whether or not the City of Orlando can regulate the use of its streets by privately owned bus and taxicab operators and may it give the former an exclusive right over the latter to operate on designated streets? Our view is that this question must be answered in the affirmative and being so, it follows that the

right of the bus operator may be protected by injunction or other appropriate relief.

The right to use the streets and highways of a municipality for the conduct of a strictly private business is not inherent, it can be acquired by permission or license from the city, whose power to withhold or grant it in the manner and to the extent it may see fit is an essential prerogative of municipal government. State v. Quigg, 94 Fla. 1056, 114 So. 859; State, *ex rel.* McCauley, v. York, 90 Fla. 625, 106 So. 418; Hodge Drive It Yourself Co. v. Cincinnati, 284 U. S. 335, 52 Sup. Ct. 144, 76 L. Ed. 323; People's Taxicab Co. v. City of Wichita, 140 Kan. 129, 34 Pac. (2d) 545.

The theory underlying these decisions and many others not included is that the streets and highways are constructed at public expense for the convenience, comfort, and use of the public. If they are permitted to be preempted and appropriated for private enterprise then their very purpose is defeated and those who bear the burden of their construction are deprived of the objective they set out to accomplish. There is then no such thing as a natural right to use the public highways for commercial purposes. Such limited right as the public may grant to use them for private business is merely a privilege that may be restricted or withdrawn at the discretion of the granting power. Whether the grant is by license, permit, or franchise is immaterial, the power to do so is plenary and may extend to absolute prohibition. The right may be granted to one and withheld from others or it may be withheld from all without transgressing any State or Federal constitutional guaranty.

The city is of course devoid of inherent power to bestow such a right on appellee as is complained of, but Chapter 10980, Acts of 1925, was ample for that purpose. The cases

cited treat such Acts and ordinances passed in pursuance of them and an examination of the doctrine announced therein leaves no ground to doubt their validity. Such ordinances have been frequently upheld when enacted on authority of the general powers granted to the municipality.

The reason for a franchise or permit in such cases, whether it be exclusive or limited, is to secure for the public an efficient, safe, and dependable service by requiring bonded operators if necessary to avoid ruinous competition, to require the use of first-class standard equipment, and to enforce such other regulations as may be deemed advisable in the interest of the public. It goes' without argument that when granted such franchises may be protected by injunction. Green v. Ivey, 45 Fla. 338, 33 So. 711; Slusher v. Safety Coach Transit Co., 229 Ky. 731, 17 S. W. (2d) 1012; Messina v. Galutza, 178 Ark. 608, 11 S. W. (2d) 468; Hazard Bus Co. v. Wells, 226 Ky. 591, 11 S. W. (2d) 413; Memphis St. R. Co. v. Rapid Transit Co., 133 Tenn. 99, 179 S. W. 635; Princeton Power Co. v. Calloway, 99 W. Va. 157, 128 S. E. 89; Denver Tramway Corp. v. People's Cab Co. of Denver, 1 Fed. Supp. 449.

The rationale of these cases is' that the public is entitled to be served economically and efficiently by the best equipped facilities obtainable, that it have a reliable and dependable service, and be freed from the vices and discomforts incident to cut rate competition. It is not necessary that the one seeking protection against the violation of his franchise establish his right to it at law. When he shows that he holds it or is entitled to hold a franchise with which there is a continuous interference he is entitled to relief.

We have examined Curry v. Osborne, 76 Fla. 39, 79 So. 293; State v. Quigg, 94 Fla. 1056, 114 So. 859; and other cases relied on by appellant, but they are not analogous.

In Curry v. Osborne the municipality had no authority to pass the ordinance and the basis of the decision was that jitneys were arbitrarily excluded from operating over certain streets of the City of Miami. The City of Orlando was authorized to enact the ordinance under review, it excluded no one from the streets of the city, and permitted any taxi to respond to specific requests and to discharge passengers anywhere in the city who had been picked up as the ordinance contemplated. Similar comment would be pertinent as to other cases relied on.

In his final decree the Chancellor found that the complainant was the owner of an exclusive franchise from the City of Orlando to operate busses for hire over designated streets in the city, that defendant had been operating a jitney bus business under a taxicab license from the city over the designated route of the plaintiff, that defendant had solicited and taken on passengers for hire along the bus route in competition with the complainant and in violation of the ordinances of the city, that defendants operate over the city picking up and delivering passengers wherever they find them irrespective of the routes the complainant operated over under an exclusive franchise, and that the drivers of defendant's taxicabs have followed a regular practice of cruising or preceding the busses of the plaintiff on their regular schedules and have solicited customers along the bus routes, many of such customers being at the time waiting at the accustomed bus stops and quite a few of them being shown to have been waiting for a bus of complainant to carry them.

There was irreconcilable conflict in the evidence in support of some of these findings, but they are amply supported and there is no disclosure whatever to warrant this Court in overthrowing them. The law and the facts fully author-

ized the relief granted. We pretermit any discussion of the ordinances passed to protect appellee's franchise because his case was one of equitable cognizance exclusive of the ordinances.

The city ordinance granting the franchise in question limited it to ten years, fixed the territory it was permitted to operate over, the charge it was permitted to make for service, and required appellee to pay two per cent. of its gross earnings annually to the city for the use of its streets in lieu of all city taxes. The ordinance in other respects provided for regulating the conduct of appellee and recognized a clear distinction between the service authorized under appellee's franchise and a jitney service contended for by appellant. This distinction is supported by both text writers and decisions.

A jitney bus is defined to be a small motor vehicle, operating along or over regular and definite routes on regular schedule for the transportation of passengers for a fare of five cents or other comparatively low sum as the name signifies. Huddy *Cyclopedia of Automobile Law* 1-2, Section 116, page 299.

The term taxicab is used to describe a conveyance similar to a hackney carriage or the old-fashioned hack or stage, which is held for hire at designated places and has no regular schedule or route, but operates to carry passengers at any time to any point and subject to call. Huddy *Automobile Law* 1-2, Section 117, page 301.

Busses, in other words, like street cars, run on fixed routes while taxicabs or jitneys are designed for individual transportation, run promiscuously, and regulate their charges by the distance traversed or the time consumed. Each has its place in the transportation system of a community and each appeals to a particular clientele. The bus was de-

signed in response to the demand of a mass transportation system and while the taxi is perhaps of the same vintage and is an auxiliary to the same demand, it was the successor of the horse drawn vehicle of another era. As in the present case, economic conditions have at times precipitated bitter antagonism between them. The following decisions have recognized these differences and distinctions: Frick v. City of Gary, 792 Ind. 76, 135 N. E. 346; People v. Thompson, 341 Ill. 166, 173 N. E. 137; State v. Dean, 129 Wash. 584, 225 Pac. 656; Anderson v. Yellow Cab Co., 179 Wis. 300, 191 N. W. 748; Denver Tramway Corp. v. People's Cab Co., *supra;* Huddy on *Automobile Law,* Section 95.

Appellant defends against the act requiring it to secure a permit to operate its taxi service in the city by charging that it was invalid because it was not approved by the mayor. It is shown, however, that it became a law without the approval of the mayor. The ordinance required among other things that the permittee submit its equipment for inspection to the city and have it approved as a prerequisite to securing a permit. Such ordinances have frequently been upheld. State v. Dillon, *supra;* City of Mobile v. Farrell, 229 Ala. 582, 158 So. 539; Wichita Transp. Co. v. People's Taxicab Co., 140 Kan. 40, 34 Pac. (2d) 550; People v. Thompson, *supra;* Kentucky Cab Co. v. City of Louisville, 220 Ky. 216, 18 S. W. (2d) 992. If appellant's failure to secure the permit is material it would support appellee's claim for injunctive relief.

It is contended that the ordinance granting appellee's franchise is bad because it attempts to fix the rates charged for taxi and bus service. We do not so construe the ordinance and the final decree of the Chancellor had no such effect. An inspection of the ordinance and the final decree discloses that they had reference to the minimum charges

that might be imposed. Such ordinances have been upheld when enacted on the general authority of the city. City of Mobile v. Farrell, 229 Ala. 294, 156 So. 635; 229 Ala. 582, 158 So. 539; Clem v. City of LaGrange, 169 Ga. 51, 149 S. E. 638; Denver Tramway Corp. v. People's Cab Co., *supra; Ex parte* Dickey, 76 W. Va. 576, 85 S. E. 781, P. U. B. 1915 E. 93.

It follows that the City of Orlando is authorized to regulate the use of its streets by privately owned bus and taxicab operators, that it was within its right in granting an exclusive franchise to Orlando Transit Company to operate busses over designated streets of the city, and that when granted said franchise may be protected by injunction or other appropriate relief. The law as pointed out in this opinion recognizes a clear distinction between the two services, the basis of that distinction, and when one is given a preference over the other on proper grounds, it will be protected.

The judgment below is accordingly affirmed.

Affirmed.

ELLIS, P. J., and BUFORD, J., concur.

WHITFIELD, C. J., and BROWN and DAVIS, J. J., concur in the opinion and judgment.