MATHEWS, Chief Justice.
This is an appeal from a final declaratory decree from the Circuit Court of. Broward County.
In June, .1953, the appellant made application to the appellee for the transfer of permits for the operation of taxicab business on the streets of the City of Hollywood. The Police Department investigated the circumstances pursuant to Ordinances 765 and 798 and from such investigation determined that one Robert Poland would be associated with the appellant as shown by the applications for transfer. The Police Department found and reported that Poland had been guilty of a felony, the commission of several misdemeanors involving intoxication and driving while intoxicated, and that an indictment was still pending against him on a charge of robbery in Ohio.
Thereafter the appellee notified the appellant that any association with Robert Poland in the operation of the taxicab *698 business would be contrary to the convenience, general welfare, morals and safety of the inhabitants of the city. Grace L. Pratt then gave her personal assurance that Poland would in no way be connected with the contemplated business in a letter to the City Commission, as follows:
“This letter is written in connection with the application of the undersigned for transfer of Checker Cab License No. 8879 from Frank Terranova to the undersigned and Century Cabs, Inc., License No. 8880 from the corporation to the undersigned individually.
“The undersigned has purchased all of the outstanding stock of Century Cabs, Inc., and is now the sole owner of said corporation. The original information furnished to you was to the effect that Robert Poland was to be vice-president and a director of the corporation and also the manager of the Checker Cabs. You are advised that this information is not correct and the undersigned wishes to give her personal assurance that the said Robert Poland will be in no way connected with either Checker Cabs or Century Cabs, Inc. Request is hereby made for the transfer of both the Checker Cab License to the undersigned individually.
“Your cooperation and favorable consideration will be greatly appreciated.” (Emphasis supplied.)
The attorney for Mrs. Pratt, in requesting that the matter of the license transfers be expedited, wrote the City Commission a letter in which he said:
“I have been further assured by Mrs. Pratt, whom I represent, that Mr. Robert Poland will be in no way associated with said cab companies or the operation thereof, either financially or as an employee in any capacity. I have advised Mrs. Pratt the seriousness of her failure to insure the City Commissioners that the said Robert Poland will not be associated with her in her operation of the cab business. I am confident that the assurance given by Mrs. Pratt in this regard will be fully carried out by her.” (Emphasis supplied.)
After giving these assurances and the permits were issued, the appellant employed said Robert Poland and when the same was brought to the attention of the City on September IS, 1953, it considered a resolution to revoke the permits issued to the appellant because of her failure to comply with the assurances. Before the resolution was adopted the appellant agreed that she would not employ Poland until a court would determine whether the appellee had the right to require the assurances from the appellant not to employ Poland in connection with the operation of the taxicab business on its streets.
In due course bill of complaint was filed seeking a declaratory decree that the appel-lee was without authority to require the assurances or to issue such conditional permits and had no authority to revoke the permits in question and the same would be a violation of her constitutional rights. In connection with her prayer for relief the appellant claimed that Ordinance 798 repealed all of Ordinance 765. The two ordinances in question are set forth in full in the record.
In and by the final decree the Chancellor found the City of Hollywood had express and implied powers to regulate traffic upon its streets in the interest of the public health, safety and welfare and to grant and revoke licenses or permits for taxicabs and has the power to impose conditions upon the issuance of permits to protect the public health, welfare, safety and convenience of its inhabitants, and also the power to revoke any such licenses or permits upon proof of breach of conditions so imposed. Among other things the final decree contained the following:
“It Is Further Ordered, Adjudged and Decreed, that the condition imposed upon the issuance of permits to the Plaintiff for the operation of taxi businesses upon the streets of the Defendant City is reasonable and consistent with the Defendant’s charter authority and the provisions of Ordinance No. *699 765 and No. 798 and constituted a valid exercise of the Defendant’s police power, and that the denial and/or revocation of said permits, upon breach of said condition, would not be violative of the constitutional rights of the Plaintiff.”
The City of Hollywood by virtue of its charter, Chapter 12877, Special Acts of 1927, and the general police powers granted to municipalities by Chapters 167 and 168, F.S., F.S.A., has the authority and power to issue permits for the operation of taxicab businesses on its streets upon such reasonable terms, conditions and assurances as the city authorities may determine. Under such charter powers the City also has the authority to revoke a permit for the violation of such conditions, restrictions and assurances and to adopt reasonable ordinances with reference to the granting of permits and the revocation of the same.
In the case of Jarrell v. Orlando Transit Co., 123 Fla. 776, 167 So. 664, 666, this Court said:
“The right to use the streets and highways of a municipality for the conduct of a strictly private business is not inherent; it can be acquired by permission or license from the city, whose power to withhold or grant it in the manner and to the extent it may see fit is an essential prerogative of municipal government. State [ex rel. Pennington] v. Quigg, 94 Fla. 1056, 114 So. 859; State ex rel. McAuley v. York, 90 Fla. 625, 106 So. 418; Hodge Drive-It-Yourself Co. v. [City of] Cincinnati, 284 U.S. 335, 52 S.Ct. 144, 76 L.Ed. 323; People's Taxicab Co. v. City of Wichita, 140 Kan. 129, 34 P.2d 545, 95 A.L.R. 1218.
“The theory underlying these decisions and many others not included is that the streets and highways are constructed at public expense for the convenience, comfort, and use of the public. If they are permitted to be pre-empted and appropriated for private enterprise, then their very purpose is defeated, and those who bear the burden of their construction are deprived of the objective they set out to accomplish. There is then no such thing as a natural right to use the public highways for commercial purposes. Such limited right as the public may grant to use them for private business is merely a privilege that may be restricted or withdrawn at the discretion of the granting power. Whether the grant is by license, permit, or franchise is immaterial; the power to do so is plenary and may extend to absolute prohibition. The right may be granted to one and withheld from others, or it may be withheld from all without transgressing any state or federal constitutional guaranty.”
Section 8 of the Ordinance No. 765 was a proper ordinance under the police power of the City and it provided for the revocation or suspension of any permit for cause. The appellant contends that all of Ordinance 765 was repealed by Ordinance 798 which related to the same subject matter.
The repealing clause of Ordinance 798 relied upon by the appellant is as follows:
“Section 19. All ordinances or parts of ordinances and resolutions or parts of resolutions'in conflict herewith are hereby repealed to the extent of such conflict.”
Section 8 of Ordinance 765, with reference to revocation and suspension, is not in conflict with any provision of Ordinance 798 and is, therefore, sufficient authority to revoke or suspend the licenses in question.
Not only did the City have the legal authority to suspend the licenses for the violation of the assurances given by the appellant but the City also had the authority to suspend the licenses for any good cause affecting the public health, safety and welfare of those using the taxicab service. The City owes to the public the highest degree of care and caution *700 with reference to permits and licenses for the operation of a taxicab business on the streets of the city. When a person, whether man, woman or child, gets in a taxicab for transportation purposes, such person’s safety is committed to the care of the taxicab driver. The city officials would be derelict in the performance of their duties if they failed to impose reasonable regulations upon .the owners or operators of such taxicabs and those holding permits or licenses to operate them.
Having reached the conclusion which we have, it is unnecessary to discuss any of the other assignments of error.
Affirmed.
THOMAS, SEBRING, HOBSON and ROBERTS, JJ., concur.
TERRELL and DREW, JJ., not participating.