875 So.2d 650 (2004)
DUCK TOURS SEAFARI, INC., Appellant,
v.
THE CITY OF KEY WEST, Florida, Appellee.
No. 3D02-2812.
District Court of Appeal of Florida, Third District.
March 17, 2004.
Rehearing or Certification Denied June 9, 2004.
*652 Kenny Nachwalter and Scott E. Perwin; Michael R. Barnes, Miami, for appellant.
David J. Audlin, Jr., for appellee.
Before COPE, LEVY and SHEVIN, JJ.
Rehearing En Banc or Certification Denied June 9, 2004.
COPE, J.
Duck Tours Seafari, Inc., an entity seeking to operate amphibious tours of Key West, appeals a summary judgment for the City of Key West on its claims of breach of the antitrust laws. We reverse.

I.
The Conch Train ("Train") and Old Town Trolley Tours ("Trolley")of Key West are two well-known tourist service entities which operate motorized tours of the City of Key West. For approximately 30 years the City has granted franchises for these tours through local ordinances. The most recent ordinances were enacted in 1995 as Ordinances 95-4 and 95-5. Pursuant to Ordinance 95-4, the City is to receive 5% of the gross receipts or $210,000 per year, whichever is greater, from the operator of the Train. Pursuant to Ordinance 95-5, the City receives a similar amount from the operator of the Trolley.
Each ordinance prohibits issuance of franchises to competitors of the Train and Trolley. The ordinances also prohibit "sightseeing or shuttle services or any other similar type of operation, their representatives and agents from having offices, depots, load[ing] or unload[ing] passengers, sell[ing] tickets or promot[ing] their business within 1,000 feet of the Grantee's [Train or Trolley's] existing depots." Ord. 95-4, § 12; Ord. 95-5, § 12 (emphasis added). Despite this limitation, the City allows the Train and Trolley, which at this point are sister corporations, to operate within 1,000 feet of each other.
In 1995 Duck Tours Seafari, Inc. ("Duck Tours") sought to begin operating a business providing sea-based sightseeing tours of Key West in World War II amphibious vehicles known as "ducks." Duck Tours desired to operate by picking up tourists at hotels and other locations in the old part of Key West. The passengers would be driven to the water entry point to board the "duck" for a tour by sea.
Duck Tours asserts that it was impossible to operate a competing tour in Key West under the limitations imposed by the above ordinances.[1] The prohibition on obtaining a franchise was a barrier to entering the market. In addition, the effect of the 1000-foot limitation was to bar Duck Tours from the areas frequented by tourists in the old part of Key West, as well as numerous hotels used by tourists. The ordinances also barred any access by Duck Tours to the landing docks used by cruise ships, these being reserved under the ordinance for the Train and Trolley. The ordinances allow full access by taxicabs and City buses, however, to all of these locations.
The City cited Duck Tours for violating the above ordinances. The City also added criminal penalties to the ordinances Duck Tours was charged with violating.
Duck Tours commenced this action against the City seeking injunctive relief for violations of the state antitrust laws. See §§ 542.18-.19, § 542.235(2), Fla. Stat. (1995). Duck Tours also asserted a claim under 42 U.S.C. § 1983 for damages and injunctive relief for violations of the Commerce *653 Clause of the United States Constitution.[2]
The City moved for summary judgment arguing that it was entitled to state action immunity and that there was no Commerce Clause violation. The trial court granted the City's motion, and Duck Tours has appealed.

II.
Florida's antitrust laws prohibit restraints of trade. See §§ 542.16, 542.18, 542.19, Fla. Stat. (1995). Florida's antitrust laws apply to local government. See id. § 542.235. The remedies available against local government are injunctive or other equitable relief, but not damages. Id.
The City argues that it is entitled to state action immunity. State action immunity is a doctrine which originated under federal antitrust law. See City of Columbia v. Omni Outdoor Advertising, Inc., 499 U.S. 365, 370-73, 111 S.Ct. 1344, 113 L.Ed.2d 382 (1991). Under Florida law, "Any activity or conduct ... exempt from the provisions of the antitrust laws of the United States is exempt from the provisions of this chapter [542]."[3] § 542.20, Fla. Stat. (1995). Thus, the doctrine of state action immunity which has developed under federal antitrust law is also an available defense to a suit against a municipality for a violation of Florida's antitrust laws.
The relevant principles have been summarized by the United States Supreme Court as follows:
The starting point in any analysis involving the state action doctrine is the reasoning of Parker v. Brown [, 317 U.S. 341, 63 S.Ct. 307, 87 L.Ed. 315 (1943)]. In Parker, relying on principles of federalism and state sovereignty, the Court refused to construe the Sherman Act as applying to the anticompetitive conduct of a State acting through its legislature. 317 U.S., at 350-351, 63 S.Ct., at 313-314. Rather, it ruled that the Sherman Act was intended to prohibit private restraints on trade, and it refused to infer an intent to "nullify a state's control over its officers and agents" in activities directed by the legislature. Id., at 351, 63 S.Ct., at 313.
Municipalities, on the other hand, are not beyond the reach of the antitrust laws by virtue of their status because they are not themselves sovereign. Lafayette v. Louisiana Power & Light Co., 435 U.S. 389, 412, 98 S.Ct. 1123, 1136, 55 L.Ed.2d 364 (1978) (opinion of BRENAN, J.). Rather, to obtain exemption, municipalities must demonstrate that their anticompetitive activities were authorized by the State "pursuant to state policy to displace competition with regulation or monopoly public service." Id., at 413, 98 S.Ct., at 1137.
Town of Hallie v. City of Eau Claire, 471 U.S. 34, 38-39, 105 S.Ct. 1713, 85 L.Ed.2d 24 (1985) (emphasis in original).
"[B]efore a municipality will be entitled to the protection of the state action exemption from the antitrust laws, it must demonstrate that it is engaging in the challenged activity pursuant to a clearly expressed state policy." Id. at 40, 105 S.Ct. 1713.
It is not necessary that state law explicitly say that the municipality is allowed *654 to suppress or limit competition. See id. at 43, 105 S.Ct. 1713. However, it must be clear that the state law has delegated to the municipality "the express authority to take action that foreseeably will result in anticompetitive effects." Id. The fact that the state has made a general delegation of home rule power to the local government is not enough to authorize anticompetitive action. Id.
The decision in Town of Hallie illustrates the point. In Town of Hallie the Wisconsin legislature had passed a statute which authorized municipalities to construct and operate sewage systems. Id. at 41, 105 S.Ct. 1713. The statute allowed the local government to set the geographic limits of such service in unincorporated areas, and stated that the municipality had no obligation to provide service beyond the geographic area so designated.
Acting pursuant to those statutes, the City of Eau Claire provided service to areas it designated. The City refused to serve neighboring towns unless the neighboring towns would allow themselves to be annexed. The neighboring towns argued that the City of Eau Claire was monopolizing sewage services and engaging in anticompetitive behavior by refusing the neighboring towns' request for access to the system. The United States Supreme Court rejected this argument, and found the state action exemption to be applicable. Id. at 44, 105 S.Ct. 1713. Monopolization within the service area, and permission to refuse to extend the service area, were both explicitly authorized by state law. Id.; see also City of Columbia v. Omni Outdoor Advertising, Inc., 499 U.S. 365, 370-74, 111 S.Ct. 1344 (1991) (where state statute authorizes cities to regulate size, location, and spacing of billboards, ordinance doing same is entitled to state action immunity).

III.
Turning to the case now before us, the City argues that Ordinances 95-4 and 95-5 are authorized by the state traffic control law, which is chapter 316, Florida Statutes (1995). The City relies on subsection 316.008(1), which allows local regulation as follows:
316.008 Powers of local authorities.
(1) The provisions of this chapter shall not be deemed to prevent local authorities, with respect to streets and highways under their jurisdiction and within the reasonable exercise of the police power, from:
(a) Regulating of prohibiting stopping, standing, or parking.
....
(g) Restricting the use of streets.
....
(n) Prohibiting or regulating the use of heavily traveled streets by any class or kind of traffic found to be incompatible with the normal and safe movement of traffic.
We reject the City's argument. As another court has said in an analogous context, "These statutes do not clearly articulate and affirmatively express a state policy to displace competition." Martin v. Stites, 203 F.Supp.2d 1237, 1246 (D.Kan.2002).

A.
The first problem is that the ordinances grant monopoly rights to the Train and Trolley. The ordinances provide that "[t]he City shall not issue any other occupational licenses, franchises, or pass any ordinance similar to this Ordinance...." Ord. 95-4, § 12; Ord. 95-5, § 12. By their terms, the ordinances grant exclusive rights to operate the Train and Trolley within Key West, and prohibit the granting of similar rights to any competitor.
*655 The City relies on the above-quoted parts of the state traffic control law as authority to do this, but the cited sections of the state traffic code do not address much less authorizethe granting or withholding of exclusive franchises. The state traffic code does not set forth any state policy to limit competition.
The City next suggests that it has the authority to grant exclusive franchises by reason of its home rule powers. That argument is unavailing. As the United States Supreme Court has said:
But plainly the requirement of "clear articulation and affirmative expression" is not satisfied when the State's position is one of mere neutrality respecting the municipal actions challenged as anticompetitive. A State that allows its municipalities to do as they please can hardly be said to have "contemplated" the specific anticompetitive actions for which municipal liability is sought. Nor can those actions be truly described as "comprehended within the powers granted," since the term "granted," necessarily implies an affirmative addressing of the subject by the State. The State did not do so here.... Indeed, Boulder argues that as to local matters regulated by a home rule city, the Colorado General Assembly is without power to act. Thus, in Boulder's view, it can pursue its course of regulating cable television competition, while another home rule city can choose to prescribe monopoly service, while still another can elect free-market competition: and all of these policies are equally "contemplated," and "comprehended within the powers granted." Acceptance of such a propositionthat the general grant of power to enact ordinances necessarily implies state authorization to enact specific anticompetitive ordinanceswould wholly eviscerate the concepts of "clear articulation and affirmative expression" that our precedents require.
Community Communications Co. v. City of Boulder, 455 U.S. 40, 55-56, 102 S.Ct. 835, 70 L.Ed.2d 810 (1982) (emphasis in original; citation omitted).
The City argues that under Florida judicial precedent, a city has the inherent power to issue an exclusive franchise for the operation of a municipal bus company. For this proposition the City relies on Jarrell v. Orlando Transit Co., 123 Fla. 776, 167 So. 664 (1936), but that decision contradicts the City's argument.
In Jarrell, the City of Orlando had granted an exclusive franchise to the Orlando Transit Company to operate a municipal bus service. Addressing the exclusive franchise, the Florida Supreme Court said, "The city is of course devoid of inherent power to bestow such a right on appellee [Orlando Transit Co.] as is complained of but chapter 10980 Acts of 1925, was ample for that purpose." Id. at 666. Thus, in Jarrell the granting of the exclusive franchise took place under specific authority given to the City of Orlando by Special Act of the Florida Legislature.
In the present case the City has not cited any legislative enactment which would authorize the granting of an exclusive franchise to the Train and Trolley. The City was not entitled to summary judgment on this point.[4]

*656 B.
Duck Tours also challenges the parts of the ordinances which bar competition within 1,000 feet of the existing depots of the Train and Trolley. The ordinances say that the City "does hereby prohibit sightseeing or shuttle services or any other similar type of operation, their representatives and agents from having offices, depots, load or unload passengers, sell tickets or promote their business within 1,000 feet of the Grantee's [Train or Trolley's] existing depots...." Ord. 95-4, § 12; Ord. 95-5, § 12.
The City argues that the state traffic control law authorizes its establishment of the 1,000 foot radius. The City relies on paragraphs 316.008(1)(a), (g), and (n), Florida Statutes (quoted earlier). We cannot accept that argument.
The ordinances at issue here do not establish ordinary classifications based on class or kind of traffic. Instead, the ordinances create competition-based classifications.
Under the ordinances, a competitor cannot have an office within 1,000 feet of the depots of the Train and Trolley. Such a prohibition has nothing to do with traffic regulation.
Under the ordinances, a competitor cannot promote its business within 1,000 feet of the depots of the Train and Trolley. This would mean that a competitor cannot post signs or distribute flyers within 1,000 feet. Such a prohibition has nothing to do with traffic regulation.
The ordinances prohibit ticket sale within 1,000 feet, thus barring ticket sales in stores or kiosks. Such a prohibition has nothing to do with traffic regulation.
The ordinances prohibit the loading or unloading of passengers within 1,000 feet. We again fail to see how this can be justified as a reasonable traffic regulation. The City argues that the 1,000 foot limitation is justified as a reasonable device to prohibit clustering of tourist operations in a small area. The problem is that the ordinance exempts everyone except competitors from the 1,000 foot limitation. The Train, Trolley, City buses, and taxis are all allowed to load and unload passengers within 1,000 feet of each other. This negates the idea that the 1,000 foot limitation serves a functional purpose other than the exclusion of competitors. It would be a different matter if the City created nondiscriminatory regulations limiting the loading and unloading of passengers to bus stops or designated loading zones, but that is not what the ordinances accomplish.
Duck Tours has supplied a map of the city setting forth the 1,000 foot radii in which Duck Tours is forbidden to engage in the activities outlined above. Duck Tours argues, and it is taken as true for present purposes, that the effect of the 1,000 foot limitation is to exclude Duck Tours from the areas in which tourists are concentrated, and limit any competing activities to areas in which there are few, if any, tourists.
Based on the record now before us, a trier of fact could conclude that the 1,000 foot separation has no reasonable basis as a traffic regulation, but instead is intended to protect the City's franchisees, the Train and Trolley, from competition. Because the traffic code does not contain any clearly expressed state policy to suppress competition, it follows that the City was not entitled to summary judgment on the issue of state action immunity.

C.
Because there must be further proceedings under the Florida antitrust law on remand, we must address the trial court's ruling earlier in these proceedings that in the event Duck Tours turns out to *657 be a prevailing plaintiff under the state antitrust laws, Duck Tours would not be entitled to its attorney's fees. For this proposition, the court relied on section 542.235, Florida Statutes (1995), which precludes damage awards and certain other relief in antitrust cases against municipalities.
Respectfully, the trial court erred on this point. Section 542.23, Florida Statutes authorizes injunctive or other equitable relief in antitrust cases. That section also authorizes attorney's fees and costs to a plaintiff who substantially prevails on such a claim. Thus, if Duck Tours should substantially prevail in its suit against the City for injunctive or other equitable relief, Duck Tours would be entitled to its attorney's fees and costs.
The trial court relied on section 542.235 which prohibits attorney's fees under certain circumstances. See id. § 542.235(2), (4). However, by its plain language section 542.235 does not bar an attorney's fee award against a local governmental entity under section 542.23.

IV.
The trial court also entered summary judgment against Duck Tours on its claim under the Commerce Clause of the United States Constitution. We conclude that the summary judgment should not have been entered.
The United States Supreme Court has said that its jurisprudence under the Commerce Clause
yields two lines of analysis: first, whether the ordinance discriminates against interstate commerce, and second, whether the ordinance imposes a burden on interstate commerce that is "clearly excessive in relation to the putative local benefits[.]"...
The central rationale for the rule against discrimination is to prohibit state or municipal laws whose object is local economic protectionism....
C & A Carbone, Inc. v. Town of Clarkstown, 511 U.S. 383, 390, 114 S.Ct. 1677, 128 L.Ed.2d 399 (1994) (citations omitted).
Key West is a major tourist destination, with large numbers of tourists arriving from other states and foreign countries. Duck Tours seeks access to the tourist market in order to offer local tours.
The United States Supreme Court has "long since rejected any suggestion that a state tax or regulation affecting interstate commerce is immune from Commerce Clause scrutiny because it attaches only to a `local' or intrastate activity." Commonwealth Edison Co. v. Montana, 453 U.S. 609, 615, 101 S.Ct. 2946, 69 L.Ed.2d 884 (1981). Thus, "[i]f it is interstate commerce that feels the pinch, it does not matter how local the operation which applies the squeeze." Heart of Atlanta Motel, Inc., v. United States, 379 U.S. 241, 258, 85 S.Ct. 348, 13 L.Ed.2d 258 (1964) (internal quotation marks omitted) (quoting United States v. Women's Sportswear Mfg. Ass'n, 336 U.S. 460, 464, 69 S.Ct. 714, 93 L.Ed. 805 (1949)).[5]
"Tourism is a `product of trade []'...." Opinion of Justices to the House of Representatives, 428 Mass. 1201, 702 N.E.2d 8, 12 (1998) (citation omitted); see also *658 Camps Newfound/Owatonna, Inc. v. Town of Harrison, 520 U.S. 564, 573, 117 S.Ct. 1590, 137 L.Ed.2d 852 (1997) (travel to summer camp in Maine "necessarily generates the transportation of persons across state lines that has long been recognized as form of `commerce.'").
In a case analogous to this one, it has been held that boat tours in a scenic area of Hawaii "constitute interstate commerce because they cater to tourists from out-of-state." Young v. Coloma-Agaran, 2002 A.M.C. 1114, 1126 (D.Haw.2001), aff'd on other grounds, 340 F.3d 1053 (9th Cir. 2003).
Reading the summary judgment record in the light most favorable to Duck Tours as the nonprevailing party, the ordinances constitute a burden on interstate commerce that is clearly excessive in relation to the putative local benefits. See C & A Carbone, Inc., 511 U.S. at 390, 114 S.Ct. 1677. We therefore also reverse the summary judgment as it relates to the Commerce Clause issue.[6]

V.
The summary judgment is reversed and the cause remanded for further proceedings consistent herewith.
NOTES
[1] For present purposes we view the summary judgment record in the light most favorable to Duck Tours as the nonmoving party.
[2] In addition Duck Tours sued the Train and Trolley for conspiracy to restrain trade, conspiracy to monopolize, and malicious prosecution. Those defendants and claims are not involved in this appeal.
[3] Chapter 542, Florida Statutes, is the chapter containing Florida's antitrust laws.
[4] The City cites Pratt v. City of Hollywood, 78 So.2d 697 (Fla.1955), but reliance on that case is likewise misplaced. The taxicab regulation at issue in Pratt had been authorized by statute and special act. Id. at 699.

Likewise off point is the City's reliance on City of Miami v. South Miami Coach Lines, 59 So.2d 52 (Fla.1952), which involved interpretation of the city code of the City of Miami.
Pratt, City of Miami, and Jarrell were not antitrust cases.
[5] While Duck Tours indicates that similar tour operations exist in other cities, it is not clear from the present record whether Duck Tours is affiliated with any such other businesses, or is an entirely local business in Key West. For present purposes, we assume that it is an entirely local business.
[6] We are not convinced that the City has carried its burden with respect to the alternative issue under the Commerce Clause, the question of discrimination against interstate commerce. We reverse on that point as well, but without prejudice to the City to renew its motion for summary judgment on that subissue on a more fully developed record.