972 So.2d 901 (2007)
The CITY OF KEY WEST, Appellant,
v.
DUCK TOURS SEAFARI, INC., Appellee.
No. 3D05-1864.
District Court of Appeal of Florida, Third District.
November 14, 2007.
*902 Robert Tischenkel; Greenberg Traurig, P.A., and Elliot H. Scherker, and Daniel M. Samson, Miami, for appellant.
Hicks & Kneale, P.A. and Mark Hicks, Miami; Michael R. Barnes, Key West; Kenny Nachwalter, P.A. and Scott E. Perwin, Miami; Robert C. Weinbaum, for appellee.
Before GERSTEN, C.J., and GREEN and RAMIREZ, JJ.
PER CURIAM.
The City of Key West ("City") appeals from a final judgment awarding damages and injunctive relief to Duck Tours Seafari, Inc., following a three-week jury trial. We affirm in part, reverse in part, and remand with instructions.
Duck Tours sought to operate sea-based sightseeing tours of Key West Harbor using World War II vehicles known as "Ducks." Similar operations exist in Boston, Massachusetts, Washington, D.C., and Branson, Missouri. Duck Tours' proposed Key West operation contained three components: the pick-up of passengers from various land-based sites for transport to the harbor, a "splash down" into the water, and the harbor tour.
For approximately thirty years, the City has had franchise agreements for sightseeing services with two sister entities: Conch Tour Train, Inc. (the "Train"), and Buggy Bus, Inc., d/b/a Old Town Trolley (the "Trolley"). Both are owned by Historic Tours of America ("HTA"). These agreements were made by municipal ordinances that not only grant franchise status to Train and Trolley, but prohibit the issuance of similar franchises to competitors. The ordinances also prohibit any sightseeing or shuttle company, other than Train and Trolley, from having offices, depots.[1] ticket sales booths, and/or passenger loading or unloading "stops" within 1,000 feet of Train and Trolley's existing depots) The City in return receives 5% of the gross receipts or $210,000 per year (whichever is greater) from both the Train and the Trolley.
In 1995, Duck Tours wanted to begin its tours in Key West and complained that it could not operate under the limitations imposed by the ordinances. It claimed that the prohibition on obtaining a franchise was a barrier to entering the market and that the 1,000 foot limitation barred it from having access to areas frequented by tourists as well as to local hotels. Moreover, Duck Tours claimed that the 1,000 foot limitation precluded it from using the landing docks used by cruise ships, because that right was exclusively reserved under the ordinances for Train and Trolley.[2]
Notwithstanding these limitations, Duck Tours did in fact begin its operation. Soon thereafter, it was cited by the City for violating the franchise agreement ordinances. Criminal penalties were also imposed. Duck Tours sued the City and the Train and the Trolley for violations of the state antitrust laws, conspiracy in restraint *903 of trade, conspiracy to monopolize and malicious prosecution.[3] It also alleged a claim against the City under 42 U.S.C. § 1983 for damages and injunctive relief for violations of the Commerce Clause of the United States Constitution. The City moved for summary judgment claiming that it was entitled to state action immunity, and that, as a matter of law, there had been no Commerce Clause violation. The trial court granted the City's motion and Duck Tours appealed.
We reversed the summary judgment on all grounds finding that the ordinances, in effect, granted monopoly rights to the Train and to the Trolley. Duck Tours Seafari, Inc. v. City of Key West, 875 So.2d 650, 654 (Fla. 3d DCA 2004) ("Duck Tours I"). In addition, we held that Duck Tours would have a viable Commerce Clause action if it could demonstrate that the ordinances were discriminatory or an excessive burden on interstate commerce. Id. at 658. Finally, we found that if Duck Tours substantially prevailed in its suit against the City for injunctive and other equitable relief, it would be entitled to its attorney's fees and costs. Id. at 657.
On remand, the Commerce Clause and antitrust claims were bifurcated, and the Commerce Clause claims were tried before a jury. The trial lasted nearly three weeks. The City moved for a directed verdict, which was denied by the trial court. The jury found that the franchise agreements discriminated against interstate commerce and awarded Duck Tours $13,467,395.00 in damages. The City's post-trial motions were denied. The court then found that the "franchise agreements" constituted an "unreasonable restraint of trade in the relevant market," on Duck Tours' anti-trust claims. The final judgment awarded Duck Tours the damages delineated in the jury's verdict, plus prejudgment interest, attorney's fees and injunctive relief. This appeal followed.
The City claims that the $13.5 million jury award must be reversed because it was improperly based on a lost profit theory. We agree and reverse for a new trial on damages.
According to Duck Tours' principal, Murphy, Duck Tours ceased its Key West operations in June 1996. Thereafter, the company sold its vehicles and used the proceeds to pay off its credit lines and to fund the underlying litigation. Regardless, over the City's objection, the court allowed Duck Tours to seek damages based solely on purported lost profits between 1997 and 2005.
In Florida, "[i]f a business is completely destroyed, the proper total measure of damages is the market value of the business on the date of the loss," not lost profits. Sostchin v. Doll Enters., Inc., 847 So.2d 1123, 1128 n. 6 (Fla. 3d DCA 2003), review denied, 860 So.2d 977 (Fla.2003); accord Susan Fixel, Inc. v. Rosenthal & Rosenthal, Inc., 921 So.2d 43, 46 (Fla. 3d DCA 2006); Montage Group, Ltd. v. Athle-Tech Computer Sys., Inc., 889 So.2d 180, 193 (Fla. 2d DCA 2004); Polyglycoat Corp. v. Hirsch Distrib., Inc., 442 So.2d 958, 960 (Fla. 4th DCA 1983). Only continuing businesses are entitled to recover lost profits attributable to a defendant's acts. Sostchin, 847 So.2d at 1128 n. 6. Thus, the trial court erred in allowing Duck Tours to seek lost profits as a measure of its damages.
Finding no merit to the other issues raised on appeal, we affirm in part, reverse in part, and remand for a new trial on damages.
NOTES
[1] Train and Trolley are permitted to operate within 1,000 feet of each other.
[2] The ordinance, however, grants City buses and taxis full access to all of these locations.
[3] The Train and the Trolley have since settled with Duck Tours.